SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Tawian Bacome (A-9-15) (075953)**

**Argued November 30, 2016 -- Decided January 31, 2017**

**Timpone, J., writing for a unanimous Court.**

In this appeal, the Court clarifies the circumstances under which police officers may require a passenger in an automobile to exit a vehicle after a valid stop.

In April 2011, detectives observed defendant driving a blue Ford Bronco. S.R., the owner of the Bronco, was riding in the front passenger seat. The detectives knew the men used and dealt narcotics and the police had received complaints of traffic to and from defendant's apartment, which is often indicative of narcotics activity. The detectives followed the Bronco, losing sight of it shortly after arriving in an area of Newark known for crime and drug trafficking. They drove back to Woodbridge and, about an hour later, observed the Bronco. The detectives observed S.R. in the passenger seat not wearing his seatbelt and conducted a traffic stop.

Once they stopped the Bronco, one detective approached the driver's side while the other approached the passenger's side. The first detective reported that he saw defendant lean forward as if he were reaching under his seat and immediately ordered defendant to exit the vehicle. The second detective then ordered S.R. out of the passenger's seat. Both occupants complied.

The detectives questioned the men separately about their destination; they gave contradictory responses. Because S.R. no longer occupied the passenger's seat, the second detective was able to glimpse a rolled-up piece of paper in the shape of a straw and a small piece of Brillo-like steel wool, items consistent with narcotics use. A detective obtained S.R.'s written consent to search the car, where he found crack cocaine and narcotics-related paraphernalia. The detectives placed defendant and S.R. under arrest.

Defendant later moved to suppress the seized narcotics and paraphernalia; the trial court denied the motion. The court found the stop to be lawful because of the passenger's failure to wear a seatbelt. The court also found the passenger's removal from the car to be lawful because the officers had reasonable and articulable suspicion of criminal activity. Defendant later pleaded guilty to third-degree possession of cocaine, a controlled dangerous substance, and was sentenced to a three-year prison term in accordance with his plea agreement.

For the first time on appeal, defendant specifically challenged S.R.'s removal from the vehicle. The Appellate Division remanded to the trial court, which found that defendant's reaching under the seat created the heightened caution required under State v. Smith, 134 N.J. 599, 618-20 (1994), and warranted S.R.'s removal.

Defendant again appealed to the Appellate Division. In a split decision, the majority reversed the trial court's order denying the suppression motion and concluded that the detectives failed to prove Smith's heightened-caution requirement. 440 N.J. Super. 228, 244 (App. Div. 2015). The majority held that stopping the vehicle for a seatbelt violation was a "ruse" that allowed the detectives to conduct a narcotics investigation.

The dissent maintained that the detectives lawfully stopped the vehicle because S.R. had failed to wear a seatbelt and they reasonably suspected that the men had purchased narcotics in Newark. Id. at 248-50 (Nugent, J., dissenting). The dissent concluded that a culpable passenger's liberty interest is no different from that of a driver who commits a traffic violation and that asking S.R. to step out of the vehicle was permissible. Id. at 247-50.

The split within the panel afforded the State an appeal as of right on the issues reached by the Appellate Division. The Court granted the State's petition for certification on other relevant issues. 223 N.J. 279 (2015).

**HELD**: The heightened-caution standard announced in Smith, supra, 134 N.J. at 618-20, remains the proper test for determining the appropriateness of ordering a passenger from a car. Under the Smith test, defendant's furtive movements inside a recently stopped vehicle provided an objectively reasonable basis for officers' exercising heightened caution, justifying removal of the passenger.

1. To be lawful, an automobile stop must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed. S.R. failed to wear his seatbelt and therefore violated the traffic code. The stop followed the detectives' observation of the traffic code violation and was therefore valid. The detectives' subjective intent is irrelevant in light of the objective grounds for the stop. Because the stop was justified by the detectives' reasonable and articulable suspicion as to the traffic offense, the Court does not reach the issue of reasonable and articulable suspicion of drug activity. (pp. 10-12)

2. The New Jersey and Federal Constitutions protect against "unreasonable searches and seizures." N.J. Const. art. I, ¶ 7; see U.S. Const. amend. IV. In 1977, the United States Supreme Court held it objectively reasonable for officers to order a driver out of a lawfully stopped vehicle. Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977). In 1994, this Court declined to extend the Mimms rule to passengers, instead determining that officers may order passengers out of a vehicle only if they can assert "specific and articulable facts that would warrant heightened caution." Smith, supra, 134 N.J. at 618. (pp. 12-14)

3. Three years after Smith, the United States Supreme Court declared, "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." Maryland v. Wilson, 519 U.S. 408, 415 (1997). After Wilson, New Jersey law was more protective than federal law on the issue of passenger removal. In State v. Sloane, 193 N.J. 423, 431 (2008), the Court concluded that, "when a police officer conducts a traffic stop of a private vehicle, the passenger as well as the driver are seized under both the federal and state constitutions." Most recently, the Court reaffirmed the Smith standard in State v. Mai, 202 N.J. 12, 22, 24-25 (2010). (pp. 14-15)

4. As to the State's contention that the Smith standard has been eroded by subsequent decisions, the Court observes that no decision since Smith, including Sloane, has implicitly or explicitly modified or overruled Smith. Here, the Court reaffirms the Smith heightened-caution standard for questions of passenger removal: officers may remove passengers only when the circumstances present reason for heightened caution. (pp. 15-17)

5. Furtive movements may satisfy the heightened caution standard. See Smith, supra, 134 N.J. at 618-19. The unknown nature of surreptitious movements creates risk for an officer and, in turn, that risk supports the exercise of heightened caution. It would be impractical to require officers to determine whether the movement was to hide a weapon or a box of tissues before taking any precautionary measures. Such a rule would threaten officer safety. (pp. 17-18)

6. Here, the furtive movements inside the car were "specific and articulable facts" that warranted heightened caution and justified removal of the passenger, placing the detectives in a position lawfully to observe the contraband in plain view. The evidence was appropriately seized under the plain-view exception to the warrant requirement, and defendant's conviction and sentence were based on properly admitted evidence. (pp. 17-18)

7. The Court notes that defendants should state the basis for a motion to suppress when making it to allow for appropriate development of the record. (pp. 18-19)

The judgment of the Appellate Division is **REVERSED**. Defendant's conviction and sentence are **REINSTATED**.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

TAWIAN BACOME,

    Defendant-Respondent.


       Argued November 30, 2016 – Decided January 31, 2017

       On appeal from and certification to the
       Superior Court, Appellate Division, whose
       opinion is reported 440 N.J. Super. 228
       (App. Div. 2015).

       Frank Muroski, Deputy Attorney General,
       argued the cause for appellant (Christopher
       S. Porrino, Attorney General of New Jersey,
       attorney).

       Michele E. Friedman, Assistant Deputy Public
       Defender, argued the cause for respondent
       (Joseph E. Krakora, Public Defender,
       attorney; Ms. Friedman and Jacqueline E.
       Turner, Assistant Deputy Public Defender, on
       the briefs).

       CJ Griffin argued the cause for amicus
       curiae American Civil Liberties Union of New
       Jersey (Edward L. Barocas, Legal Director,
       attorney; Ms. Griffin, Mr. Barocas, Jeanne
       M. LoCicero, and Alexander R. Shalom, of
       counsel and on the brief).

    JUSTICE TIMPONE delivered the opinion of the Court.

In this appeal, we clarify the circumstances under which police officers may require a passenger in an automobile to exit a vehicle after a valid stop.

We underscore that the heightened-caution standard we announced in State v. Smith, 134 N.J. 599, 618-20 (1994), remains the proper test for determining the appropriateness of ordering a passenger from a car. Under the Smith test, we hold that defendant's furtive movements inside a recently stopped vehicle provided an objectively reasonable basis for officers' exercising heightened caution, justifying removal of the passenger.

I.

In April 2011, Detectives Jaremczak and Harris were engaged in an undercover drug patrol in Woodbridge when they observed defendant driving a blue Ford Bronco. S.R., the owner of the Bronco, was riding in the front passenger seat. Having previously encountered both men, Jaremczak knew the men used and dealt narcotics. The police department had also received complaints from defendant's neighbors of "a lot of traffic coming and going from [his] apartment," which, in Jaremczak's experience, is often indicative of narcotics activity.

In their unmarked vehicle, the detectives followed the Bronco, losing sight of it shortly after arriving in an area of Newark known for crime and drug trafficking. In an attempt to

2

pick up the Bronco's trail, the detectives drove back to Woodbridge, presuming that defendant and S.R. would return there with newly purchased drugs.

About an hour later, the detectives observed the Bronco re-enter Woodbridge.  The detectives resumed surveillance and, after they both observed S.R. in the passenger seat not wearing his seatbelt, they conducted a traffic stop.

Once they stopped the Bronco, Harris approached the driver's side while Jaremczak approached the passenger's side. Harris reported that he saw defendant lean forward as if he were reaching under his seat.  Harris immediately ordered defendant to exit the vehicle.  Jaremczak then ordered S.R. out of the passenger's seat.  Both occupants complied.

The detectives questioned the men separately about their destination; they gave contradictory responses.  Because S.R. no longer occupied the passenger's seat, Jaremczak was able to glimpse a rolled-up piece of paper in the shape of a straw and a small piece of Brillo-like steel wool on the car floor, near the front of the center console.  Jaremczak knew from experience that those items are consistent with narcotics use.

Following the inconsistent accounts of defendant and S.R. about their destination and the plain-view observation of the Brillo and straw, Jaremczak obtained S.R.'s written consent to search the car.  Jaremczak concluded that S.R. did not appear to

3

be under the influence of narcotics and apparently understood his rights. Upon execution of the search, Jaremczak found "blunt wrappers," or cigar shells often used to wrap marijuana; a used crack pipe inside a cigarette pack; a larger piece of Brillo; and thirteen vials of crack cocaine in a separate cigarette pack. The detectives placed defendant and S.R. under arrest. At the police station, defendant gave a videotaped statement, confessing to being the sole owner of the crack cocaine and the narcotics-related paraphernalia.

Defendant later moved to suppress the seized narcotics and paraphernalia. At the suppression hearing, the State produced Jaremczak, who testified to the facts described; Harris did not testify.

The trial court denied defendant's suppression motion. The court found the stop to be lawful because of the passenger's failure to wear a seatbelt. The court also found the passenger's removal from the car to be lawful because the officers had reasonable and articulable suspicion of criminal activity. The court also determined that S.R. freely and voluntarily consented to the search, permitting the officers to lawfully seize the paper straw and the Brillo under the plain-view doctrine.

Defendant later pleaded guilty to third-degree possession of cocaine, a controlled dangerous substance (CDS), contrary to

4

N.J.S.A. 2C:35-10(a)(1), and was sentenced to a three-year prison term in accordance with his plea agreement.

For the first time on appeal, defendant specifically challenged S.R.'s removal from the vehicle. The Appellate Division remanded to the trial court for a more fulsome review of the permissibility of S.R.'s removal, including any constitutional implications of the search and seizure. On remand, the trial court found that defendant's reaching under the seat created the heightened caution required under Smith and warranted S.R.'s removal. Defendant again appealed to the Appellate Division.

In a split decision, a majority of the Appellate Division panel reversed the trial court's order denying the suppression motion and concluded that the detectives failed to prove Smith's heightened-caution requirement. State v. Bacome, 440 N.J. Super. 228, 244 (App. Div. 2015). The majority held that stopping the vehicle for a seatbelt violation was a "ruse" that allowed the detectives to conduct a narcotics investigation. Id. at 244 n.11. On that premise, the majority concluded that S.R.'s removal from the vehicle was based on nothing more than a "hunch" that fell short of the heightened awareness of danger required to order a passenger out of the car. Id. at 238.

The dissent took issue with the majority's characterization of the detectives' conduct as a "ruse," maintaining instead that

5

the detectives lawfully stopped the vehicle because S.R. had failed to wear a seatbelt and they reasonably suspected that defendant and S.R. had purchased narcotics in Newark. Id. at 248-50 (Nugent, J., dissenting). The dissent distinguished this case from Smith because here it was the passenger who engaged in the illegal conduct of not wearing a seatbelt, whereas in Smith the court was protecting non-culpable passengers. Id. at 248. The dissent also discussed the United States Supreme Court's opinion in Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S. Ct. 330, 333, 54 L. Ed. 2d 331, 337 (1977), which indicated that, even in the absence of furtive movements or evidence of criminal activity, a police officer has the right to demand that a driver stopped for a traffic violation exit the vehicle. Bacome, supra, 440 N.J. Super. at 248 (Nugent, J., dissenting). Because this Court has not spoken on the issue of the culpable passenger, the dissent relied on Mimms to conclude that a culpable passenger's liberty interest is no different from that of a driver who commits a traffic violation. Id. at 247-48. The dissent concluded, based on the available case law, that asking S.R. -- a culpable passenger -- to step out of the vehicle was permissible. Id. at 250.

The split within the panel afforded the State an appeal as of right on the issues of whether the police need enhanced suspicion before ordering an allegedly culpable passenger from a

6

car and whether the detectives' subjective intent to investigate drug activity defeated their objectively reasonable decision to stop the automobile for a motor-vehicle violation. See R. 2:2-1(a)(2).

In addition, we granted the State's petition for certification on the issue of whether this Court's holding in State v. Sloane, 193 N.J. 423 (2008), is in tension with Smith. 223 N.J. 279 (2015). We further granted certification regarding the sufficiency of the detectives' reasonable and articulable suspicion that defendant and passenger were engaged in drug activity. Ibid. We also granted certification on the final issue raised in the State's petition -- whether a defendant-appellant may challenge for the first time on appeal the removal of a co-occupant from a vehicle. Ibid. We granted the motion of the American Civil Liberties Union of New Jersey (ACLU) to participate as amicus curiae.

## II.

### A.

The State advances two independent grounds, both of which it argues justify the stop: the seat belt violation and the detectives' reasonable and articulable suspicion of drug activity. Echoing the Appellate Division dissent, the State argues that the subjective intentions of the police play no role in search-and-seizure analysis. The State asserts that the

7

Appellate Division majority's characterization of the stop as a "ruse" to pursue a drug investigation was in error.

The State further argues that police officers have inherent authority to remove passengers from lawfully stopped vehicles, deriving the authority from this Court's decision in Sloane, supra, which held that "passenger[s] as well as the driver are seized under both the federal and state constitutions" during traffic stops. 193 N.J. at 431. Reasoning that Sloane adopted the rationale of two United States Supreme Court cases -- Brendlin v. California, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007), and Maryland v. Wilson, 519 U.S. 408, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997) -- the State asserts that the Appellate Division failed to consider the effect of Sloane in its analysis. In the State's view, in holding that passengers are seized during a stop, Sloane recognized that a passenger's liberty interest is de minimis during a stop and therefore does not outweigh the interest in officer and public safety.

Relatedly, the State argues that the Appellate Division erred in relying on Smith. The State asserts that this Court's holding in Sloane, which relied on United States Supreme Court precedent that came after Smith, superseded Smith's distinction between drivers and passengers.

Alternatively, the State contends that if Sloane did not overrule Smith's heightened-caution requirement, the detectives

8

had the necessary heightened awareness of danger to remove S.R. from the car, due to the suspected drug activity from which the detectives could reasonably surmise that weapons might be in the vehicle.

The State also posits that the removal of both occupants was justified because the detectives articulated reasonable suspicion of drug activity. In the State's view, the information about defendant's apartment and the reputations of defendant and S.R. as drug dealers, combined with their presence in a known narcotic-trafficking area, gave the detectives a reasonable suspicion that defendant and S.R. were engaged in drug activity.

### B.

Defendant asks this Court to affirm the Appellate Division's decision and find that the circumstances here did not warrant heightened caution under Smith. Defendant contests the State's assertion that Sloane overruled Smith, pointing out that this Court reaffirmed Smith's holding in State v. Mai, 202 N.J. 12, 22, 24-25 (2010).

Defendant also contends that the seatbelt violation did not create heightened caution warranting S.R.'s removal. Defendant argues that officers should not have the power to automatically order passengers out of a vehicle each time a motor vehicle summons is issued. Instead, defendant suggests that passengers

9

who commit "innocuous motor vehicle violation[s]," or "minor traffic offense[s] such as a seatbelt violation," should be ordered out of a vehicle only when there is a threat of danger.

Finally, defendant asserts that the detectives did not have a reasonable suspicion of drug activity. Defendant argues their observations gave rise to a hunch at most, and a hunch falls short of reasonable suspicion. According to defendant, the only valid basis for the stop was the seatbelt violation, which did not justify ordering the passenger out of the vehicle.

C.

Amicus ACLU encourages the Court to uphold the Smith standard and permit police officers to remove a passenger from a vehicle only when the officer is "able to point to specific and articulable facts that would warrant heightened caution to justify ordering the occupants to step out of a vehicle detained for a traffic violation." The ACLU asserts that this Court has already rejected the State's argument to overturn Smith in Mai.

III.

We begin our analysis by considering whether the stop was justified.

The Appellate Division majority emphasized the subjective intent of the detectives regarding their narcotics investigation in effectuating the motor vehicle stop. Bacome, supra, 440 N.J. Super. at 238. The objective reasonableness of police officers'

10

actions -- not their subjective intentions -- is the central focus of federal and New Jersey search-and-seizure jurisprudence. See, e.g., Whren v. United States, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89, 98 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); State v. Bruzzese, 94 N.J. 210, 219 (1983) ("[T]he proper inquiry for determining the constitutionality of a search-and-seizure is whether the conduct of the law enforcement officer who undertook the search was objectively reasonable, without regard to his or her underlying motives or intent."), cert. denied, 465 U.S. 1030, 104 S. Ct. 1295, 79 L. Ed. 2d 695 (1984).

Rather than focus on the detectives' putative intentions, our attention belongs on the objective reasonableness of the stop. To be lawful, an automobile stop "must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed." State v. Carty, 170 N.J. 632, 639-40 (2002). This traffic stop had all the indicia of validity. S.R. failed to wear his seatbelt and therefore violated the traffic code. See N.J.S.A. 39:3-76.2(f). The stop followed the detectives' observation of the traffic code violation and was therefore valid. The detectives' subjective intent is irrelevant in light of the objective grounds for the stop.

11

Because the stop was justified by the detectives'
reasonable and articulable suspicion that a traffic offense was
being committed, we need not reach the issue of whether the
detectives had reasonable and articulable suspicion of drug
activity to stop the vehicle.

With that determination, we turn next to the propriety of
the detectives' ordering the passenger out of the stopped
vehicle.

IV.

Article I, Paragraph 7 of the New Jersey Constitution, like
its federal counterpart, protects against "unreasonable searches
and seizures." N.J. Const. art. I, ¶ 7; see U.S. Const. amend.
IV. Under both Constitutions, ordering a person out of a car
constitutes a seizure because the person's liberty has been
restricted. Smith, supra, 134 N.J. at 609, 611. Ordering an
occupant out of a vehicle is permitted only when it is
objectively reasonable to do so. See Whren, supra, 517 U.S. at
813, 116 S. Ct. at 1774, 135 L. Ed. 2d at 98; Bruzzese, supra,
94 N.J. 210, 219-20.

In 1977, the United States Supreme Court held it
objectively reasonable for officers to order a driver out of a
lawfully stopped vehicle, finding removal only a minor intrusion
into a driver's personal liberty. Mimms, supra, 434 U.S. at
111, 98 S. Ct. at 333, 54 L. Ed. 2d at 337. After Mimms,

12

however, uncertainty remained concerning the authority of law enforcement to remove passengers from a car.

Notably, in 1994, this Court declined to extend the Mimms rule to passengers. See Smith, supra, 134 N.J. at 618. Instead, we determined that officers may order passengers out of a vehicle only if they can assert "specific and articulable facts that would warrant heightened caution." Ibid.

In Smith, two police officers spotted a vehicle speeding on the highway and initiated a traffic stop. Id. at 604. As the vehicle moved to the shoulder, the officers observed the rear passenger reach forward toward the front passenger and the driver reach back toward the rear passenger. Id. at 604-05. Based on those observations, the officers asked all three occupants to step out of the vehicle. Id. at 605. A pat-down of the front passenger resulted in the seizure of crack cocaine. Id. at 606. Both the driver and the passenger moved to suppress the seized crack cocaine evidence as the fruit of a warrantless search. Id. at 607.

We rejected the argument that the officers' automatic authority to remove drivers extends to passengers, emphasizing that passengers are different from drivers "because the passenger has not engaged in the culpable conduct that resulted in the vehicle's stop." Id. at 615. We concluded that ordering a passenger out of the car represents an intrusion on a

13

passenger's liberty and is therefore proper only when the circumstances warrant heightened caution.  Id. at 615, 618-19. Applying that standard to the defendants, we found the officers' observations of suspicious movements after the vehicle was stopped sufficient to warrant heightened caution, permitting them to remove the passengers from the car.  Id. at 618-19.

Three years after this Court decided Smith, the United States Supreme Court declared, "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop."  Wilson, supra, 519 U.S. at 415, 117 S. Ct. at 886, 137 L. Ed. 2d at 48.  The Court opined that "danger to an officer . . . is likely to be greater when there are passengers in addition to the driver in the stopped car," and that danger outweighs the minor intrusion on the passenger's liberty.  Id. at 414-15, 117 S. Ct. at 886, 137 L. Ed. 2d at 48.

After Wilson, New Jersey law was more protective than federal law on the issue of passenger removal, consistent with this Court's interpretation of the State Constitution to provide greater protection against unreasonable searches and seizures than the Fourth Amendment.  See, e.g., State v. Earls, 214 N.J. 564, 584 (2013).

In 2008, this Court returned to the issue of automobile stops when we considered whether a passenger in a car is seized during a traffic stop.  Sloane, supra, 193 N.J. at 429.  During

14

the course of a routine traffic stop, officers ordered both a driver and a passenger back to their car after they exited their stopped vehicle and approached the patrol car. Id. at 426. We relied on the United States Supreme Court's analysis in Brendlin to conclude that, "when a police officer conducts a traffic stop of a private vehicle, the passenger as well as the driver are seized under both the federal and state constitutions." Id. at 431. We did not discuss our Smith decision when deciding Sloane.

Most recently, we reaffirmed the Smith standard in Mai, supra, 202 N.J. at 15. Finding "no reason to depart from the elegant reasoning" in Smith, we determined that an officer may open the door of a vehicle if the circumstances create a heightened awareness of danger. Id. at 22.

V.

A.

Before applying the legal principles set forth above to the facts of this case, we pause to address the State's contention that the Smith standard has been eroded by subsequent decisions.

In Smith, we determined that a police officer may order a passenger out of a vehicle if the officer can "point to specific and articulable facts that would warrant heightened caution to justify ordering the occupants to step out of a vehicle detained

15

for a traffic violation." Smith, supra, 134 N.J. at 618. We find no reason to depart from that practical standard.

No decision since Smith, including Sloane, has implicitly or explicitly modified or overruled our decision in Smith. Contrary to the State's assertion, Sloane and Smith are readily harmonized. They share the commonality of heightened danger. In Sloane, supra, the police officer ordered the car occupants back into their car as they ran toward his patrol car after the stop. 193 N.J. at 426. The officer was reasonably concerned for his own safety; there was no need to discuss heightened caution. In Smith, supra, the police officer ordered the passengers out of the vehicle after witnessing furtive movements inside the car. 134 N.J. at 604-05. Again, the officer was reasonably concerned for his own safety. In both cases, the scales tipped in favor of officer safety, given the limited liberty interests of the automobile occupants.

Two years after our Sloane decision, this Court further reaffirmed the Smith standard in Mai. In Mai, supra, a police officer opened a passenger-side sliding door as a protective measure before ordering the passengers to exit the van. 202 N.J. at 16. There, we expressly rejected the State's request to overturn Smith and adopt Wilson, finding no legitimate reason to do so. Id. at 22.

16

In this case, we reaffirm the Smith heightened-caution standard for questions of passenger removal. Our position with respect to automatic authority to order passengers out of a vehicle has not changed: officers may remove passengers only when the circumstances present reason for heightened caution.

B.

In applying the heightened-caution standard to the facts of this case, we apply a deferential standard of review to the motion judge's factual findings made at the suppression hearing. See State v. Elders, 192 N.J. 224, 245 (2007). A key element in our analysis is Detective Jaremczak's testimony that, after the detectives pulled the Bronco over, Detective Harris observed defendant reaching forward under his seat. We defer to the motion judge's finding that Jaremczak's testimony was credible.

Furtive movements may satisfy the heightened caution standard. See Smith, supra, 134 N.J. at 618-19. The unknown nature of surreptitious movements creates risk for an officer and, in turn, that risk supports the exercise of heightened caution. It would be impractical to require officers to determine whether the movement was to hide a weapon or a box of tissues before taking any precautionary measures. Such a rule would threaten officer safety.

Here, the furtive movements inside the car were "specific and articulable facts" that warranted heightened caution to

17

order the passengers out of the vehicle.  That the passenger's removal led to the plain-view observation of the narcotics paraphernalia is a natural consequence of the officers' legitimate exercise of heightened caution.

In sum, we find that the detectives' heightened caution justified removal of the passenger from the vehicle, placing the detectives in a position lawfully to observe the contraband in plain view.  The evidence, therefore, was appropriately seized under the plain-view exception to the warrant requirement.  See State v. Gonzales, 227 N.J. 77 (2016).  Accordingly, defendant's conviction and sentence were based on properly admitted evidence.

## VI.

We conclude with a final point.  Defendants should state the basis for a motion to suppress at the outset to allow for appropriate development of the record.  See State v. Robinson, 200 N.J. 1, 18-19 (2009).  Here, defendant raised concerns about the passenger's removal for the first time on appeal.  Had defendant raised this issue earlier, the State could have called Detective Harris to testify to his personal observations during the traffic stop, which were the basis for the passenger's removal.  Instead, the record consisted only of Detective Jaremczak's report of his partner's observations.  In the

18

future, the better course is for defendants to state the basis of the suppression motion when making it.

## VII.

We reverse the decision of the Appellate Division and reinstate defendant's conviction and sentence.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion.