NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1258-15T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

SAUL A. MILLS,

 Defendant-Appellant.
_____________________________

 Submitted September 25, 2017 – Decided October 3, 2017

 Before Judges Sabatino, Whipple and Rose.

 On appeal from Superior Court of New Jersey,
 Law Division, Bergen County, Indictment No.
 13-08-1210.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Jay L. Wilensky, Assistant
 Deputy Public Defender, of counsel and on the
 briefs).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Sarah C. Hunt, Deputy
 Attorney General, of counsel and on the
 briefs).

PER CURIAM

 Following the trial court's denial of his motion to suppress

incriminating evidence that police had seized in a warrantless car
search, defendant Saul A. Mills conditionally pled guilty to

second-degree robbery, N.J.S.A. 2C:15-1, and second-degree

unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). Other

charges were dismissed and defendant preserved his right to appeal

the suppression ruling. The trial court sentenced defendant to

concurrent seven-year custodial terms on the two offenses, subject

to statutory parole ineligibility periods.

 On appeal, defendant contends that the warrantless search of

the car in which he had been riding as a passenger was

unconstitutional. He submits that the trial court also erred in

rejecting his request to draw an adverse inference against the

State because one of the two separate video recordings of the

motor vehicle stop was not preserved. He further argues that his

sentence is excessive, and that the sentencing judge improperly

applied aggravating factor twelve (concerning a defendant's

knowledge or reason to know a victim was over the age of sixty),

N.J.S.A. 2C:44-1(a)(12).

 For the reasons that follow, we remand the suppression issues

to the trial court for reconsideration, and possible further

development of the factual record, in light of the Supreme Court's

recent opinion in State v. Robinson, 228 N.J. 529 (2017)

(illuminating the requirements for a permissible warrantless

"protective sweep" of a motor vehicle). We affirm, however, the

 2 A-1258-15T1
trial court's rejection of the requested adverse inference. We

also uphold the sentence imposed, subject to the outcome of the

reconsideration motion, which if favorable to defendant could

result in him having the option of withdrawing his guilty plea.

 I.

 Because we are remanding this matter in light of recent case

law, and additional facts may be developed and clarified on remand,

we need not detail the factual record at length.

 At approximately 2:00 in the morning on August 25, 2012,

defendant was in the rear passenger seat of a car when it was

stopped by several Fairview Township police officers for a broken

headlight. One of the Fairview officers spoke with the driver,

while another officer spoke to defendant and the front passenger,

who was later identified as defendant's boss. The driver provided

his identification, although the two passengers had none in their

possession.

 As the officers began to write summonses for motor vehicle

violations, they heard radio dispatch reporting a robbery. The

dispatch stated that a robbery had been committed minutes earlier

by three men, at a social club in the neighboring town of Cliffside

Park.

 The Fairview officers responded on the radio that they had

just pulled over three men and were waiting for backup. Meanwhile,

 3 A-1258-15T1
a sergeant from Cliffside Park drove from the scene of the robbery

to the location of the motor vehicle stop. The sergeant spoke to

the men, who he perceived to match the description of the robbers,

and ordered them out of the car. Once out of the car, the men

stood near its trunk with their hands on the vehicle, under guard

of three separate officers. Shortly after the sergeant arrived,

several other officers were on the scene providing backup.1

 The men were frisked and a warrantless search of the passenger

compartment was conducted. Wallets and a mask were found. Another

officer, who came from the nearby town of Ridgefield to provide

backup, looked into the trunk with a flashlight through the

partially opened, backseat armrest. That officer reported seeing

the butt of a gun, and he alerted his fellow officers to the

weapon's presence. A full search of the trunk revealed two guns,

as well as money, wallets, cell phones, and another mask. The

three men were arrested.

 The judge who presided over the suppression hearing

considered the testimony of four of the police officers who had

participated in the motor vehicle stop and warrantless search of

the car's interior. The judge found the officers' testimony to

1
 Although it is not precisely clear from the evidence in the
record, it appears that there could have been seven or more
officers present at the point in time when the protective sweep
of the car turned up firearms.

 4 A-1258-15T1
be generally credible, although she expressed some concerns about

various uncertainties in the testimony of the officer who had

probed into the trunk area. The judge also considered the video

recording ("MVR") of the stop filmed from one of the Cliffside

Park squad cars.

 The suppression judge issued a written opinion upholding the

warrantless search of the car interior. Specifically, the judge

concluded that the search was justified under both the automobile

exception to the warrant requirement and the "protective sweep"

doctrine. The judge further ruled that principles of inevitable

discovery would independently enable the State's admission of the

fruits of the search, even if the other exceptions to the warrant

requirement had not been fulfilled.

 The suppression judge rejected defendant's claim that the

failure of the Ridgefield Police Department to preserve its own

squad car's MVR of the scene compelled an adverse inference against

the State. The judge agreed with the prosecution's argument that

such a second MVR, recorded from a car that was behind a Fairview

squad car, was unlikely to have provided more probative evidence

of the activities at the scene.

 As we have noted, having lost his suppression motion,

defendant entered into a negotiated guilty plea with the State,

subject to his right to appeal the suppression ruling. See R.

 5 A-1258-15T1
3:5-7(d). Under the plea agreement, the State agreed to recommend

a custodial sentence within the second-degree range of five to ten

years. The seven-year concurrent sentences imposed by the trial

court2 were consistent with that agreement.

 On appeal, defendant raised the following arguments for our

consideration in his merits brief:

 POINT I

 THE WARRANTLESS SEARCH AND SEIZURE OF THE CAR
 IN WHICH THE DEFENDANT WAS A PASSENGER
 VIOLATED THE DEFENDANT'S STATE AND FEDERAL
 CONSTITUTIONAL PROTECTIONS AGAINST UNLAWFUL
 SEARCH AND SEIZURE, NECESSITATING
 SUPPRESSION. U.S. CONST., AMENDS. IV, XIV;
 N.J. CONST. (1947), ART. 1, PAR. 7.

 A. The Warrantless Search Was Not Justified
 by the Automobile Exception.

 1. The Requisite Probable Cause Did Not
 Exist.

 2. The Requisite Exigent Circumstances
 Also Did Not Exist.

 B. The Search Exceeded the Bounds of a
 Permissible Protective Sweep.

 C. This Wholly Unlawful Search Is Not Saved
 By the Inevitable Discovery Doctrine.

 D. The Court Erred In Refusing to Draw an
 Adverse Inference From the Loss of a
 Recording of the Incident.

2
 A different judge, who is now retired, imposed the sentence.

 6 A-1258-15T1
 POINT II

 THE COURT IMPOSED AN EXCESSIVE SENTENCE,
 NECESSITATING REDUCTION.

In addition, at this court's request, defendant and the State

filed supplemental briefs addressing the Supreme Court's recent

2017 opinions in Robinson, supra, regarding protective sweeps, and

State v. Bacome, 228 N.J. 94 (2017), regarding the authority of

police to order passengers to step out of a vehicle. Both of

those opinions were issued by the Court after the parties' merits

briefs in this matter had been filed.

 Defendant argues that the Court's opinion in Robinson,

focusing on fact-sensitive questions relating to the risks of

danger and a defendant's access to weapons inside a vehicle,

requires reversal of the trial court's ruling. 3 The State's

supplemental brief counters that the facts that led the Court to

invalidate the protective sweep in Robinson are materially

distinguishable from those presented here.

 II.

 A.

 We address defendant's arguments in revised sequence, and

begin with the protective sweep issue. In considering that subject

3
 Defendant concedes that under the standards expressed in Bacome,
supra, 228 N.J. at 106-08, that the police in this case had
sufficient justification to order all three men out of the car.

 7 A-1258-15T1
and the other search-and-seizure issues, we are mindful that

individuals are protected under both the Fourth Amendment of the

United States Constitution and under Article I, paragraph seven

of the New Jersey Constitution from unreasonable governmental

searches and seizures that infringe upon their privacy interests.

U.S. Const., amend IV, N.J. Const., art I, para. 7. Our courts

have expressed a "preference that police officers secure a warrant

before they execute a search." State v. Witt, 223 N.J. 409, 422

(2015) (citing State v. Frankel, 179 N.J. 586, 597-98, cert.

denied, 543 U.S. 876, 125 S. Ct. 108, 160 L. Ed. 2d 128 (2004)).

Warrantless searches may be permitted if they fall within "one of

the 'few specifically established and well-delineated exceptions'

to the warrant requirement." Ibid. (quoting Frankel, supra, 179

N.J. at 598).

 The protective sweep doctrine is one such recognized

exception to the warrant requirement. The exception derives from

the United States Supreme Court's holding in Terry v. Ohio, 392

U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) (authorizing the

limited intrusion of a police "stop and frisk" of a pedestrian

where there is reasonable suspicion that the individual may have

engaged in criminal activity).

 In Long, the Court applied the protective sweep exception in

an automobile setting. Michigan v. Long, 463 U.S. 1032, 1049, 103

 8 A-1258-15T1
S. Ct. 3469, 3481, 77 L. Ed. 2d 1201, 1220 (1983). There, the

Court authorized a limited search of a vehicle's passenger area

for purposes of officer safety. Ibid. The Court observed in Long

that such a "protective sweep" should be restricted to those areas

where a weapon could be hidden or placed if an officer "possesses

a reasonable belief based on specific and articulable facts, which

taken together with rational inferences from those facts,

reasonably warrant" the officer’s belief that the suspect poses a

danger and "may gain immediate control of weapons." Ibid. (quoting

Terry, supra, 392 U.S. at 21, 88 S. Ct. at 1880, 20 L. Ed. 2d at

906) (internal quotation marks omitted).

 In State v. Lund, 119 N.J. 35, 48-50 (1990), our State Supreme

Court adopted the federal test for vehicular protective sweeps

that had been articulated in Long. Hence, the coterminous federal

and state constitutional standard for a valid protective sweep is

whether the State demonstrates "specific and articulable facts

that, considered with the rational inferences from those facts,

warrant a belief that an individual in the vehicle is dangerous

and that he or she 'may gain immediate control of weapons.'"

Robinson, supra, 228 N.J. at 547 (quoting Long, supra, 463 U.S.

at 1049, 103 S. Ct. at 3481, 77 L. Ed. 2d at 1220). See also

State v. Gamble, 218 N.J. 412, 432 (2014). The police may perform

a warrantless protective sweep of a vehicle's passenger

 9 A-1258-15T1
compartment where the totality of circumstances support "a

reasonable suspicion that a driver or passenger 'is dangerous and

may gain immediate access to weapons.'" Robinson, supra, 228 N.J.

at 534 (quoting Gamble, supra, 218 N.J. at 432).

 Several months before the motion judge's December 2014

suppression ruling in the present case, the New Jersey Supreme

Court issued its opinion in Gamble applying these standards. The

Court concluded on the factual record in Gamble that a warrantless

protective sweep of a car interior was justified. In that case,

the police conducted an investigatory stop of a vehicle matching

the reported description of a van in which a man had been seen

sitting with a gun in his lap. Id. at 418-19. As the two police

officers on the scene approached the van, the defendant driver and

his passenger were "moving frantically inside the vehicle, as if

trying to hide something." Id. at 419 (internal quotation marks

omitted). When the lead officer ordered the occupants out of the

vehicle, the defendant aborted his exit from the vehicle and tried

to return to the driver's seat. Id. at 420. The lead officer

pulled the defendant from the van, frisked him for weapons, and

placed him under the supervision of the other officer who was also

guarding the passenger. Id. The Court held in Gamble that, in

light of defendant's defiant conduct and the officers' failure to

find a weapon on the person of either occupant, a protective sweep

 10 A-1258-15T1
of the vehicle was justified at that point. Id. at 433. That is

so because, as the Court reasoned, the officers had a reasonable

basis to believe that the individuals were dangerous and could

gain immediate access to weapons. Id. at 434.

 In its later May 2017 opinion in Robinson, the Court reached

an opposite conclusion, striking down as illegal the warrantless

search of a passenger compartment after a valid motor vehicle

stop. We shall proceed to discuss the factual setting in Robinson

– the Court's newest pronouncement on the protective sweep doctrine

in a vehicle context – in extensive detail for comparative purpose.

 In Robinson, a single officer in a marked patrol car conducted

a valid motor vehicle stop, saw four people in the car, and noticed

that none of the occupants wore a seatbelt. Robinson, supra, 228

N.J. at 536. Shortly after making the stop, the officer was

advised by his department's dispatcher that the driver of the car

had an outstanding warrant for a drug offense. Id. at 537. The

dispatcher also told the officer to use caution because the

defendant was known to carry weapons. Ibid. The dispatcher

further advised the officer that one of the passengers also had

an outstanding traffic warrant. Ibid. The officer called for

backup and was met by four other uniformed officers, who assisted

in directing two of the four occupants out of the car, as well as

handcuffing, and arresting them. Id. at 537-38. The officers

 11 A-1258-15T1
detained, but failed to arrest, the other two occupants. Id. at

538.

 The officers in Robinson then patted down the two detained

individuals, but found no weapons. Ibid. The two men, who

remained un-cuffed, were then told to stand on the roadside as the

officers monitored them. Ibid. The testifying officer stated

that he did not see either of the detained passengers reach for a

weapon, attempt to hide anything, or resist the officers'

directions. Ibid. The sergeant on the scene then directed one

of the officers to conduct a sweep of the car's interior to check

for weapons. Ibid. After searching the front driver and passenger

areas, the officer lifted a purse found on the front passenger

seat. Ibid. The officer testified that he felt the outline of a

gun when he felt the bottom of the purse. Id. at 538-39. The gun

was retrieved by the officer, all passengers were secured, and the

five officers on the scene then decided to seek a search warrant.

Id. at 539.

 The Court found that the on-the-spot search of the car that

produced the handgun was not within the warrant requirement's

protective sweep exception. Robinson, supra, 228 N.J. at 549.

The Court concluded that, although the circumstances justified a

reasonable suspicion that a weapon was in the vehicle, the five

officers' "swift and coordinated action eliminated the risk that

 12 A-1258-15T1
any of the four occupants would gain immediate access to the

weapon." Id. at 535.

 The Court recognized in Robinson that there was "no doubt"

that the officers had justifiable support for a reasonable

suspicion that at least some of the occupants were armed and that

a weapon was present, especially given the late hour of the stop,

among other considerations. Id. at 548. The Court also recognized

that although no weapons were found on the occupants when they

were frisked, the absence of weapons did not remove the need for

concern. Ibid.; see Gamble, supra, 218 N.J. at 432-33. Even so,

the Court emphasized that this potential danger had been met at

the scene with effective and prompt police action. Robinson,

supra, 228 N.J. at 549.

 Among other things, the Court noted in Robinson that because

the original responding officer had "summoned four backup

officers, the officers outnumbered the occupants of the vehicle."

Ibid. Two of the occupants were handcuffed, while those that

remained unsecured "were cooperative" and "carefully monitored."

Ibid. The Court concluded that the officers collectively were

therefore able to maintain control of the vehicle and the scene

generally. Ibid. Because of this prudent police work, none of

the car's former occupants realistically had the opportunity to

access the car or a weapon. Ibid. The Court remanded the case,

 13 A-1258-15T1
however, for the trial court to address the unresolved issue of

inevitable discovery. Id. at 552-54.

 In her written opinion in the present case, the suppression

judge concluded that "[t]he officers at the scene had gathered

more than enough facts to warrant a protective sweep." Among

other things, the judge noted that a reported armed robbery had

recently occurred in a neighboring town involving three men wearing

masks and brandishing handguns, that the three men in the stopped

vehicle were likewise wearing dark clothing, that the two

passengers lacked identification, that a pat-down of the driver

had revealed a wad of cash, and that an initial warrantless foray

into the vehicle had turned up a mask covered underneath a

sweatshirt.

 Perhaps most importantly, the suppression judge concluded

that the officers "had reason to believe that they were dealing

with armed and dangerous individuals." Moreover, the judge

specifically found that the vehicle's trunk area, where the guns

and other contraband were ultimately found during the second

interior search, was a location as to which the occupants could

have gained "immediate access." Citing Gamble and other protective

sweep decisions, the court reasoned that "[w]hile no

precedent[ial] case addresses the permissibility of a [protective

 14 A-1258-15T1
sweep] search of the trunk through the interior of the vehicle,

the same legal foundation for the exception exists."

 In their supplemental briefs, defendant and the State differ

on whether the facts in the present case are akin to, or materially

distinguishable from, those in Robinson. Defendant stresses,

among other things, that by the time the protective sweep of the

trunk compartment was undertaken here: (1) all three men were

outside of the car under the supervision of at least three

officers; (2) by the time the gun was found at least seven officers

were present; (3) the men had been cooperative; (4) the driver was

not intoxicated; and (5) the trunk was closed. The State counters

that: (1) at least two of the officers who had been standing guard

were holding flashlights; (2) at least one of the officers who

could have stood guard was shown on the video being temporarily

distracted by other activities away from the car; and (3) that it

was feasible for one of the men standing at the rear of the car

to suddenly obtain a weapon, presumably either by overtaking an

armed officer or somehow gaining access to the trunk.

 The present record in this case, including the DVD of the

video recording – which was presented to the motion judge and

which we have likewise observed as an exhibit – is simply not

amenable to resolving these fact-laden matters conclusively. For

example, one plausible interpretation of the video may be that the

 15 A-1258-15T1
police had already started to handcuff the three men as the

protective search of the trunk compartment was being undertaken. 4

Other material factual questions, such as the number of officers

who were actually present when the protective sweep began, the

number of officers who were holding flashlights, whether the trunk

feasibly could have been opened by one of the occupants with or

without a key while under police guard, and so on, have not been

clearly resolved.

 We recognize that the Supreme Court has instructed that it

is generally not a reviewing court's function to second-guess

factual findings made by trial judges on suppression motions based

on independent appellate review of video evidence. See State v.

S.S., 229 N.J. 360, 364-65 (2017). We are equally cognizant that

the motion judge in this case lacked the benefit of the Supreme

Court's analytic guidance concerning protective sweeps in

Robinson, an opinion which was issued over two years after the

trial court's ruling.5 As counsel have now helpfully spotlighted

through their supplemental briefs, there are numerous material

4
 In this regard, we suggest the trial court review the videotape
at approximately time stamp 2:06:50.
5
 Notably, the State has not argued that Robinson, which was
decided while the present case was in the appellate pipeline, does
not apply to the present facts. Nor does the Court's opinion in
Robinson state that its holding applies only prospectively.

 16 A-1258-15T1
factual aspects of this matter affecting this case which are either

disputed, unclear, or which were not the subject of express

findings in the motion judge's pre-Robinson decision.

 For these many reasons, we conclude that the appropriate

course of action is to remand this matter to the trial court to

reconsider its original suppression ruling in light of Robinson.

As part of the remand, the record should be developed with more

precision on the critical factual matters relating to the actual

scope of danger posed when the two protective sweeps were

undertaken, including but not limited to, the important question

of whether the men were already being handcuffed when the trunk

search was being conducted.

 To the extent the trial court deems it appropriate, one or

more of the arresting police officers may be re-called on remand

to clarify or amplify their testimony. In addition, the trial

court is invited to review again the video recording, this time

with the guidance of Robinson. We do not intimate any advisory

opinion on the outcome of the remand. Instead, we leave it to the

trial court in the first instance to make another careful

assessment of the course of events and the legality of the search,

with specific associated factual findings.

 17 A-1258-15T1
 B.

 We turn briefly to defendant's remaining arguments. First,

we conclude that the question of whether the search of the

vehicle's interior is justified under the "automobile exception"

to the warrant requirement is likewise dependent on the trial

court's renewed factual assessments on remand. Because the search

here predates State v. Witt, supra, 223 N.J. at 449 (noting that

Witt is a "new rule of law" to be applied "purely prospectively"),

the analysis under the automobile exception is guided by the former

multi-factor test set forth in State v. Peña-Flores, 198 N.J. 6,

28 (2009).

 We agree with the trial court that the State sufficiently

established probable cause indicating a "fair probability that

contraband or evidence of a crime" would be found within the car,

given that the police had a very recent report of the local robbery

and their observations of the three car occupants'

characteristics. See State v. Moore, 181 N.J. 40, 46 (2004).

However, the question of whether "exigent circumstances" were

present at the scene to justify the immediate search of the car's

interior substantially overlaps with the issues of danger and

realistic access to weapons that need to be re-analyzed under the

protective sweep doctrine. Consequently, we defer to the trial

court in reconsidering this exigency issue on remand, including,

 18 A-1258-15T1
among other things, consideration of the actual ratio of officers

to passengers at the scene when the car was twice searched without

a warrant. See State v. Dunlap, 185 N.J. 543, 545-46 (2006)

(focusing on the ratio); see also Peña-Flores, supra, 198 N.J. at

29-30.

 C.

 Next, we likewise defer to the trial court in reconsidering

the applicability of the doctrine of inevitable discovery. To

obtain the benefit of that doctrine, the State must establish, by

clear and convincing proof, that: "(1) proper, normal and specific

investigatory procedures would have been pursued in order to

complete the investigation of the case; (2) under all of the

surrounding relevant circumstances the pursuit of those procedures

would have inevitably resulted in the discovery of the evidence;

and (3) the discovery of the evidence through the use of such

procedures would have occurred wholly independently of the

discovery of such evidence by unlawful means." State v. Sugar,

100 N.J. 214, 238 (1985) (citations omitted); see also State v.

Holland, 176 N.J. 344, 361-62 (2003) (reaffirming these

requirements).

 Here, the suppression judge concluded that the State met the

requirements of inevitable discovery because the officers had

sufficient proof to arrest defendant and his two cohorts, and to

 19 A-1258-15T1
impound the vehicle, which would then be subject to an inventory

search. However, that analysis may have been affected in part by

an assumption that the ski mask uncovered in the first warrantless

entry into the car had been lawfully seized. Depending on how the

trial court rules on remand concerning the protective sweep and

exigent circumstances issues, that evidential aspect of probable

cause to arrest defendant may be inapplicable.6

 In addition, the protective sweep analysis may be affected

by the State's following statement it recently advanced within its

supplemental brief:

 As defendants were not under arrest until
 probable cause was definitely established by
 the discovery of the guns, and it had already
 been determined that [the driver] had a valid
 driver's license and was not under the
 influence, there was no reason he would not
 have been permitted back into the car to drive
 himself and the other two defendants away. In
 fact, before learning of the armed robbery,
 Officers Napolitano and Schmitt had every
 intention of letting defendants go after
 issuing the summonses, as evidenced by the
 fact they had already allowed [the driver]
 back in the vehicle after determining he was
 not under the influence.

 [Ssb7 (emphasis added)].

6
 We distinguish in this regard between the level of probable cause
needed to support a search under the automobile exception, and the
probable cause required to support an arrest of a vehicle's former
occupants.

 20 A-1258-15T1
This statement arguably suggests that the State now concedes that

the occupants would have been allowed by the police to reenter the

car and drive it away, but for the fact that guns were discovered

in the trunk during the second protective sweep. If this apparent

concession is accepted at face value, it may undermine the analytic

support for a finding of inevitable discovery. Rather than resolve

the legal significance of the State's above-quoted assertion here,

we refer this subject to the trial court's consideration.

 D.

 Defendant's final non-sentencing argument is that the trial

court should have applied an adverse inference against the State

pursuant to State v. Hollander, 201 N.J. Super. 453, 479 (App.

Div.), certif. denied, 101 N.J. 335 (1985), because the Ridgefield

Police Department did not preserve the MVR of the squad car that

responded to the motor vehicle stop after the Fairview officers

had already arrived. This argument lacks sufficient merit to be

discussed in detail. R. 2:11-3(e)(2).

 It will suffice for us to note that we concur with the trial

court's assessment that the failure to preserve the Ridgefield

recording – which had not been requested – was not intentionally

done to prejudice defendant's rights, but instead the recording

had been erased in the "normal course" of the municipality's data

 21 A-1258-15T1
maintenance procedures. Moreover, it is exceedingly unlikely that

an MVR recording from the Ridgefield squad car, which was parked

behind the Fairview squad car two cars behind defendant's vehicle,

would have presented non-cumulative information of any

consequence. The MVR recording from the Cliffside Park squad car

was ample video evidence under the circumstances.

 E.

 Lastly, we reject defendant's challenge to his sentence. We

acknowledge that the sentencing judge lacked a sufficient

evidential basis to find, under aggravating factor twelve, that

defendant knew or had reason to know that one of the robbery

victims was over the age of sixty just because an elderly man's

identification was found in the vehicle. Nonetheless, the court's

finding on this discrete point manifestly could not have undermined

the overall fairness and propriety of the sentence. Apart from

this incidental finding, the aggravating and mitigating factors

otherwise identified by the sentencing judge clearly justified the

seven-year custodial term imposed. See State v. Case, 220 N.J.

49, 65 (2014); see also State v. Fuentes, 217 N.J. 57, 73 (2014).

 22 A-1258-15T1
We further observe that the sentence was below the midpoint of the

five-to-ten-year range set forth in the negotiated plea agreement.7

 Affirmed in part, and remanded in part. Pending the outcome

of the remand, defendant's conviction and sentence remain in force.

We do not retain jurisdiction.

7
 On remand, we direct the trial court to amend the judgment of
conviction to omit aggravating factor twelve.

 23 A-1258-15T1