**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0170-19T4

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

TYRONE WILLIAMS and
ABDUR MUHAMMAD,[1]

      Defendants-Respondents.

_____

Argued January 8, 2020 – Decided January 24, 2020

Before Judges Fuentes, Haas and Enright.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 18-02-0020.

Sarah D. Brigham, Deputy Attorney General, argued the cause for appellant (Gurbir S. Grewal, Attorney General, attorney; Sarah D. Brigham, of counsel and on the brief).

---

[1] This defendant also is referenced in the record as Abdurnd Muhammad and Abdur Muhammed.

Joseph D. Rotella argued the cause for respondent Tyrone Williams.

Michael B. Campagna argued the cause for respondent Abdur Muhammad (Michael B. Campagna, attorney, joins in the brief of respondent Tyrone Williams).

PER CURIAM

On February 18, 2018, a grand jury indicted defendants Tyrone Williams and Abdur Muhammad for second-degree conspiracy to possess with intent to distribute heroin, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(1), or to possess with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7 (count one); third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1) (count two); first-degree possession with intent to distribute heroin, N.J.S.A. 2C:35-5(a)(1), 2C:35-5(b)(1), and 2C:35-5(c) (count four); and third-degree possession with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7 (count five). Additionally, the grand jury indicted Williams for second-degree distribution of heroin, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(2) (count three).

By leave granted, the State appeals from an interlocutory order granting defendants' motion to suppress evidence seized from a vehicle driven by Williams. Based on this record and mindful of prevailing legal standards, we affirm.

A-0170-19T4

We recite only the pertinent facts, which are gleaned from the testimony of the only witness to testify at the suppression hearing, Detective Christopher Durning.

On July 8, 2016, Detective Durning and Detective Joseph Palach of the New Jersey State Police were detailed to a Targeted Integrated Deployment Effort in Newark, to suppress violent crime and narcotics distribution. While on duty and driving in an unmarked vehicle, the officers observed a Dodge station wagon that was illegally parked about five feet from a stop sign, in violation of N.J.S.A. 39:4-138(h). The Dodge's engine was running, its front windows were open, but its headlights were off. Williams was in the driver's seat and Muhammad was in the front passenger's seat. Both defendants were using their cell phones.

Detective Durning drove up alongside the Dodge and when he was within a few feet of it, he saw Williams pass Muhammad an opaque black bag that appeared "bricked off" at the bottom. The detectives shone their flashlight into the interior of the vehicle and Detective Durning saw Muhammad immediately drop the bag.

The police officers exited their unmarked car and Detective Durning walked up to the driver's side of the Dodge; Detective Palach approached the

A-0170-19T4

passenger side, where Muhammad was seated. Detective Durning saw the bag Muhammad dropped to the floorboard of the Dodge and wondered what was in it. The detective could not see the bag's contents, and believed Muhammad was "trying to hide [the bag]." Muhammad blocked the detective's view of the bag with his left leg.

After Detective Durning approached Williams, he told Detective Palach he detected the odor of alcohol emanating from the passenger compartment of the Dodge. Detective Durning was concerned Williams might be guilty of driving while under the influence of alcohol or that the occupants of the Dodge had an open container of alcohol inside the running car,[2] but he did not find evidence of either infraction or recall asking Williams any questions. Detective Durning testified he did not fear for his safety when he walked toward the defendants.

Once Detective Durning told his partner he detected the odor of alcohol coming from inside the Dodge, Detective Palach ordered Muhammad out of the vehicle. Contemporaneously, Detective Durning ordered Williams out of the car. When Muhammad exited the Dodge, Detective Durning saw green

---

[2] Pursuant to N.J.S.A. 39:4-51b, "[a]ll occupants of a motor vehicle located on a public highway, or the right-of-way of a public highway, shall be prohibited from possessing any open or unsealed alcoholic beverage container."

A-0170-19T4

cellophane sticking out of the open black bag on the floorboard. The contents of the bag looked to him like bricks of heroin. Detective Palach retrieved the bag and discovered it contained 105 bricks of heroin.

Defendants were arrested at the scene. Following their arrest, the police officers conducted a warrantless search of the Dodge's passenger compartment. They recovered 360 additional bricks of heroin during this search.

At the suppression hearing, Detective Durning testified it was not his intention to look in the black bag when he initially exited his vehicle. However, he also testified that his "focus" during the incident "was to see what . . . that bag was." The detective admitted in his testimony that the contents of the bag "could have been something completely . . . not illegal at all," and "could have been boxes of cereal." He also affirmed he did not see defendants engage in any illegal activity before Detective Palach found the heroin.

Although the motion judge granted defendants' motion to suppress all evidence seized from the Dodge, she found Detective Durning to be a credible witness. She further found he was not interested in the contents of the black bag when he initially approached the Dodge and only became interested in the contents of the bag after Muhammad exited the vehicle. Additionally, she found the detectives initiated a lawful investigatory stop of the defendants based on a

suspected motor vehicle infraction under N.J.S.A. 39:4-138(h). The judge was satisfied the detectives were lawfully in the viewing area when they saw the contents of the black bag. However, she determined that in the absence of a heightened sense of caution, the officers exceeded the scope of their investigatory stop by ordering Muhammad out of the vehicle. As the judge noted:

> [h]ad [d]efendant Muhammad never been given instructions to exit the car, the [d]etectives would never have seen the contents of the bag. As a result, the seizure of [d]efendant Muhammad that yielded the seizure of the evidence itself the [c]ourt deems is the result of the unconstitutional activities of the police and [the evidence] is hereby suppressed as the fruit of the poisonous tree. Wong Sun v. United States, 371 U.S. 471 (1963).

On appeal, the State raises the following arguments:

POINT I

> THE DETECTIVES PROPERLY SEIZED THE BRICKS OF HEROIN UNDER THE PLAIN-VIEW DOCTRINE AND THE AUTOMOBILE EXCEPTION.

A. The stop was lawful because the detectives not only had reasonable suspicion that the station wagon was in violation of the motor-vehicle code, they had reasonable suspicion that defendants were engaged in other illegal activity.

B. The passenger was lawfully ordered out of the vehicle because not only did the detectives have heightened

6

caution based on defendants' suspicious movements in the vehicle, they had reasonable suspicion that the passenger was engaged in culpable conduct.

C.    The detectives lawfully seized the 105 bricks of heroin in the black bag under the plain-view doctrine.

D.    The detectives also lawfully seized the additional 360 bricks of heroin in the blue bag under the automobile exception.

We are not persuaded by these arguments and affirm, substantially for the reasons set forth in the motion judge's oral decision of July 1, 2019 and her written opinion dated August 7, 2019. We add only a few brief remarks.

Our review of a trial court's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). "[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are 'supported by sufficient credible evidence in the record.'" State v. Elders, 192 N.J. 224, 243 (2007) (citing State v. Locurto, 157 N.J. 463, 474 (1999)). The "trial court's findings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" Id. at 244 (citing State v. Johnson, 42 N.J. 146, 162 (1964)). However, we utilize a de novo standard when reviewing a trial judge's legal conclusions. State v. Boone, 232 N.J. 417, 426 (2017).

A-0170-19T4

We perceive no basis to disturb the motion judge's finding that the detectives' initial investigatory stop was justified by their reasonable and articulable suspicion that a traffic offense was being committed. Accordingly, we turn to the propriety of Muhammad being ordered out of the stopped vehicle. Our Supreme Court has held a police officer "may order a passenger out of a vehicle if the officer can 'point to specific and articulable facts that would warrant heightened caution to justify ordering the occupants to step out of a vehicle detained for a traffic violation.'" State v. Bacome, 228 N.J. 94, 106 (2017) (quoting State v. Smith, 134 N.J. 599, 618 (1994)).

> [T]he officer need point only to some fact or facts in the totality of the circumstances that would create in a police officer a heightened awareness of danger that would warrant an objectively reasonable officer in securing the scene in a more effective manner by ordering the passenger to alight from the car.
>
> [Smith, 134 N.J. at 618.]

The Bacome Court confirmed that even if an officer has authority to remove a driver from a vehicle, that authority does not automatically extend to removal of a passenger "because the passenger has not engaged in the culpable conduct that resulted in the vehicle's stop." 228 N.J. at 105 (quoting Smith, 134 N.J. at 615).

8

Here, the record is devoid of any explanation as to why Detective Palach ordered Muhammad out of the vehicle. Likewise, there is nothing in the record to demonstrate circumstances that created a heightened awareness of danger that warranted defendants' removal from the Dodge. Although the motion judge's factual findings did not include Detective Durning's "focus" on the black bag before its contents were revealed, we are satisfied such an omission is inconsequential. Moreover, we are persuaded the motion judge's finding that the detectives improperly ordered defendants out of their vehicle is fully supported by the facts in the record. Therefore, her legal conclusions are unassailable.

The State's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0170-19T4