**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4649-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

VINCENT JACKSON, a/k/a
VINCE JACKSON,

     Defendant-Appellant.

_____

Argued October 1, 2018 – Decided November 8, 2018

Before Judges Fasciale and Rose.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 13-07-1268.

Elyse S. Schindel argued the cause for appellant (Hobbie, Corrigan & Bertucio, PC, attorneys; Edward C. Bertucio, of counsel and on the briefs; Elyse S. Schindel, on the briefs).

Monica do Outeiro, Assistant Prosecutor, argued the cause for respondent (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Monica do Outeiro, of counsel and on the brief).

PER CURIAM

Following denial of his motion to suppress evidence seized without a search warrant, defendant Vincent Jackson pled guilty to second-degree possession with intent to distribute heroin, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3), as amended from a first-degree offense, charged in a six-count Monmouth County indictment. Defendant was sentenced to an eight-year prison term with four years of parole ineligibility in accordance with the Brimage guidelines,[1] and the State's recommendation in the plea agreement.[2] The remaining charges in the indictment, a related disorderly persons offense charged in a summons, and two unrelated indictments, were dismissed pursuant to the plea agreement. The sentencing judge ordered a twenty-four-month suspension of defendant's driver's license, and imposed appropriate fines and penalties.

On appeal, defendant challenges the denial of his motion. He argues the police lacked a reasonable and articulable suspicion to stop his vehicle, lacked

---

[1] State v. Brimage, 153 N.J. 1 (1998).

[2] Defendant retained the right to argue for a parole ineligibility period of two years and four months, and a hardship waiver of his driver's license suspension. See N.J.S.A. 2C:35-16(a).

probable cause to arrest him for obstruction, and the resulting search incident to his arrest was unlawful. Defendant also claims that his girlfriend's consent to search her apartment, and the search and seizure of a safe, which was conducted pursuant to a warrant, were unlawful. Lastly, defendant contends his sentence was excessive. We reject these arguments and affirm.

I.

We derive the following facts from the record developed at the suppression hearing. Late in the evening on April 6, 2013, Asbury Park police officers assigned to the Street Crimes Unit were on routine patrol. While parked in an undercover vehicle in a high crime area, they observed a green Oldsmobile roll past a stop sign without completely stopping. Officer Joseph Spallina stopped the vehicle for violating the stop sign statute, N.J.S.A. 39:4-144. After conducting the stop, Spallina recognized the driver as defendant from a prior arrest and an ongoing narcotics investigation conducted by the Monmouth County Prosecutor's Office (MCPO). Notably, Spallina testified that, had he known defendant was driving the vehicle, he would not have made the stop to avoid jeopardizing the MCPO's investigation.

Spallina approached the driver's side window and noticed both of defendant's hands were placed in his jacket pockets. In response to Spallina's

request to produce his license and registration, defendant handed the officer his credentials with his right hand, but his left hand remained in his pocket. Defendant "seemed nervous. His hand was shaking as he was handing [Spallina] the information. And he was sweating profusely. . . . [even though] it was about [forty] degrees out" and defendant's car windows were open.

Spallina described the area where the motor vehicle stop occurred as "the subject of numerous narcotics and weapons[-]related investigations and arrests. It's also been the subject of a number of shots[-]fired calls . . . [and] a number of reports of . . . armed subjects . . . ." Spallina asked defendant "[m]ultiple times" to show "both of his hands" for the safety of the officers, but defendant refused to do so. Concerned that defendant was armed, Spallina asked him to step out of the vehicle.

Defendant complied with Spallina's request by "reach[ing] all the way over" and opening the car door with his right hand, which seemed "unusual." As he exited the vehicle, defendant turned the left side of his body away from Spallina. "Again, [defendant] seemed nervous. His eyes were darting back and forth, as if he were looking for [an] avenue of escape. And he was sweating." Spallina then observed defendant "moving [his left hand] around as if he was manipulating something." Because defendant refused to remove his hand,

Spallina placed him under arrest for obstructing the motor vehicle stop. N.J.S.A. 2C:29-1(a). Concerned that defendant was armed with a weapon, Spallina then grabbed defendant's left arm to prevent him from removing anything from his pocket. In response, defendant clenched his fist and pushed the object further into his jacket. With assistance from his three partners, Spallina handcuffed defendant and performed a search incident to the arrest, seizing approximately four and a half bricks of heroin from defendant's left jacket pocket and ten bags of heroin from his right jeans pocket.

After defendant was transported to police headquarters, Spallina and another officer responded to an apartment in a housing complex on Washington Avenue. Defendant's girlfriend, S.C.,[3] leased the apartment and defendant stayed there on "some nights." S.C. signed a consent to search form, and permitted the officers to search the bedroom where defendant kept some clothing and a safe. S.C. told the officers she wanted defendant's contraband out of her apartment because it could jeopardize her and her children. A K-9 unit responded to the apartment and positively alerted for the presence of narcotics in the safe. The officers then removed the safe, obtained a warrant to search its contents, and seized CDS located therein.

---

[3] We use initials to protect S.C.'s privacy.

The court held a pretrial testimonial hearing regarding defendant's motion to suppress the evidence seized from his person and from the safe. Spallina and one other officer testified at the hearing. Defendant did not testify or present any evidence. The motion judge denied defendant's motion, finding: (1) the traffic stop was lawful; (2) Spallina was justified in ordering defendant to exit the car; (3) defendant's refusal to remove his hands from his pockets gave Spallina probable cause to arrest him; (4) the search of defendant's person incident to the arrest was lawful; (5) the apartment search was legal because S.C. knowingly and freely consented; (6) and all of the above were valid steps in obtaining the warrant to search the safe. This appeal followed.

On appeal, defendant raises the following issues for our consideration:

> POINT I
>
> THE TRIAL COURT ERRONEOUSLY DENIED [DEFENDANT]'S MOTION TO SUPPRESS EVIDENCE SEIZED WITHOUT A WARRANT AND THE APPELLATE DIVISION SHOULD REVERSE THE TRIAL COURT'S DECISION AND SUPPRESS THE PHYSICAL EVIDENCE IN THIS CASE.
>
> A. THE STOP AND PROLONGED DETENTION OF [DEFENDANT]'S MOTOR VEHICLE WAS UNLAWFUL.
>
> B. [DEFENDANT]'S ARREST WAS UNLAWFUL.

C. THE SEARCH OF [DEFENDANT]'S PERSON AS A "SEARCH INCIDENT TO ARREST" WAS UNLAWFUL.

D. THE REQUEST FOR CONSENT AND THE SUBSEQUENT SEARCHES WERE UNLAWFUL.

E. THE ITEMS SEIZED DURING THE EXECUTION OF THE SEARCH WARRANT SHOULD HAVE BEEN SUPPRESSED.

POINT II

THE TRIAL COURT ERRONEOUSLY SENTENCED [DEFENDANT] TO EIGHT (8) YEARS IN NEW JERSEY STATE PRISON WITH A FOUR (4) YEAR PERIOD OF PAROLE INELIGIBILITY AND A TWENTY-FOUR (24) MONTH PERIOD OF DRIVER'S LICENSE SUSPENSION. THE TRIAL COURT SHOULD HAVE SENTENCED [DEFENDANT] TO EIGHT (8) YEARS IN NEW JERSEY STATE PRISON WITH THE MINIMUM PERIOD OF PAROLE INELIGIBILITY AND NO PERIOD OF LICENSE SUSPENSION.[4]

II.

Our review of a trial judge's decision on a motion to suppress is "highly deferential." State v. Gonzales, 227 N.J. 77, 101 (2016); State v. Robinson, 200

---

[4] Because each of defendant's point headings cite to the March 2, 2015 order denying his motion to suppress, they fail to comply with Rule 2:6-2(a)(1), mandating citation to "the place in the record where the opinion or ruling in question is located." Nonetheless, we consider the merits of defendant's arguments. See State v. Kyles, 132 N.J. Super. 397, 400 (App. Div. 1975).

N.J. 1, 15 (2009). "An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)). We do so "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424-25 (2014) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We owe no deference, however, to conclusions of law made by trial courts in suppression decisions, which we instead review de novo. State v. Watts, 223 N.J. 503, 516 (2015).

Our federal and state constitutions both guarantee the right of persons to be free from unreasonable searches and seizure in their home. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "[S]earches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable and therefore invalid." State v. Elders, 192 N.J. 224, 246 (2007). "[T]he State bears the burden of proving by a preponderance of the evidence that a warrantless search or seizure 'falls within one of the few well-delineated exceptions to the

warrant requirement.'" Ibid. (quoting State v. Pineiro, 181 N.J. 13, 19-20 (2004)).

A.

We first address defendant's contentions that the stop of his vehicle and "prolonged detention" were unlawful and a "pretext to conduct warrantless searches of his person in conjunction with an ongoing narcotics investigation." A motor vehicle stop is lawful if authorities have a "reasonable and articulable suspicion" that violations of motor vehicle or other laws have been or are being committed. State v. Bacome, 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639-40, modified on other grounds, 174 N.J. 351 (2002)). Reasonable suspicion may arise even where a minor traffic offense is committed. Ibid. See State v. Barrow, 408 N.J. Super. 509, 514-19 (App. Div. 2009) (holding police officer had reasonable, articulable basis for traffic stop when driver had two items hanging from rearview mirror that officer deemed obstructions to the driver's vision); State v. Cohen, 347 N.J. Super. 375, 381 (App. Div. 2002) (holding darkly tinted windows of the defendant's vehicle provided reasonable basis for traffic stop).

Here, Spallina observed defendant's failure to stop his motor vehicle in violation of N.J.S.A. 39:4-144. That eyewitness observation is sufficient to

legitimize a traffic stop.  See Bacome, 228 N.J. at 103.  Defendant's contention that the State did not elicit testimony that he actually failed to stop at the stop sign is belied by the record.  Indeed, Spallina testified on direct examination that defendant "[s]lowed down, but didn't come to a complete stop before he made the right turn onto Prospect."  Spallina confirmed that observation on cross-examination stating, defendant "slowed" at the stop sign "[a]nd then turned right."

Nor was the stop unnecessarily prolonged.  Prolonging a traffic stop "beyond the time reasonably required to complete the . . . stop's purpose . . . is unlawful absent independent reasonable suspicion of criminal activity."  State v. Dunbar, 229 N.J. 521, 536 (2017).  However, "If, during the course of the stop or as a result of the reasonable inquiries initiated by the officer, the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden [the] inquiry and satisfy those suspicions."  State v. Dickey, 152 N.J. 468, 479-80 (1998) (alteration in original) (internal quotation marks omitted).

While nervousness or anxiety alone might be insufficient grounds to support an investigatory detention, a person's "furtive movements inside a recently stopped vehicle [may] provide[] an objectively reasonable basis for

officers' exercising heightened caution, justifying removal . . . ." <u>Bacome</u>, 228 N.J. at 97. In <u>Bacome</u>, the police stopped the defendant's vehicle after noticing the passenger was not wearing a seatbelt. <u>Ibid.</u> The Court found the defendant simply "lean[ing] forward as if he were reaching under his seat" constituted valid justification for the officers ordering defendant out of the car. <u>Ibid.</u>

Here, defendant was nervous and perspiring profusely on a cold night in a high crime area known for shootings. He made furtive movements with his left hand, which he refused to remove from his jacket pocket despite repeated requests from Spallina. The officer, therefore, had reason to suspect defendant could be armed. Thus, "independent reasonable suspicion of criminal activity" justified prolonging defendant's detention. <u>See</u> <u>Dunbar</u>, 229 N.J. at 536.

Moreover, defendant's claim that the stop was illegal as a pretext to search for drugs is belied by the record. Pretextual stops are generally permitted. <u>Whren v. United States</u>, 517 U.S. 806, 814-15 (1996). New Jersey generally follows <u>Whren</u>. <u>See</u> <u>Bacome</u>, 228 N.J. at 103 ("The objective reasonableness of police officers' actions—not their subjective intentions—is the central focus of federal and New Jersey search-and-seizure jurisprudence."); <u>Dickey</u>, 152 N.J. at 475 (citing <u>Whren</u> and noting that a traffic stop is valid as long as police had probable cause to believe driver is violating motor vehicle law).

Only in certain racial-profiling situations, which are not alleged here, has our Supreme Court found pretextual stops unlawful. See State v. Segars, 172 N.J. 481, 495 (2002) (holding defendant must establish prima facie racial profiling and that State must not have a race-neutral reason for stop). There is nothing in the record to suggest Spallina's actions were otherwise unreasonable. See Bacome, 228 N.J. at 103. Further, Spallina's testimony casts doubt that the traffic stop was a pretext for a drug search. Rather, Spallina's unrefuted testimony established that he was not aware defendant was driving the car until he pulled him over, and would not have done so to avoid interfering with the MCPO's investigation. In fact, Spallina "[took] the hit" for arresting defendant by advising an MCPO sergeant before the sergeant heard about the arrest from other sources. We are, therefore, unpersuaded that the stop was unlawfully pretextual or unreasonable.

B.

We next address defendant's arguments that his arrest for obstruction was unlawful. In doing so, we address defendant's overlapping arguments that he was unlawfully charged with obstruction because he did not physically interfere with Spallina's duties; he should have been issued a summons because

obstruction is a disorderly persons offense; and the resultant search incident to his arrest for that offense was unlawful.

"In determining whether there was probable cause to make an arrest, a court must look to the totality of the circumstances and view those circumstances from the standpoint of an objectively reasonable police officer." State v. Basil, 202 N.J. 570, 585 (2010) (citations and internal quotations omitted). The personal observations of law enforcement officers are generally regarded as highly reliable and sufficient to establish probable cause. See State v. O'Neal, 190 N.J. 601, 613-14 (2007); State v. Moore, 181 N.J. 40, 46-47 (2004).

A person commits obstruction if he "purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act." N.J.S.A. 2C:29-1(a). A police officer acting in objective good faith is considered to be "lawfully performing an official function." State v. Reece, 222 N.J. 154, 171 (2015). "A suspect is required to cooperate with the investigating officer even when the legal underpinning of the police-citizen encounter is questionable." Id. at 172.

A-4649-16T4

We have acknowledged circumstances that give rise to obstruction "often turn on the precise details of the charged conduct." State v. Powers, 448 N.J. Super. 69, 74 (App. Div. 2016), certif. denied, 231 N.J. 111 (2017). For example, physically resisting an officer's efforts to complete a pat-down search can constitute an obstruction. See State v. Wanczyk, 201 N.J. Super. 258, 262-63 (App. Div. 1985).

Here, after defendant's car was lawfully stopped in a high crime area, he repeatedly refused to comply with Spallina's requests to remove both hands from his jacket pockets. After he exited the vehicle, defendant attempted to conceal the left side of his body from Spallina. Defendant then pushed the object in his pocket further inside the jacket, while sweating profusely and looking for an "avenue of escape." Based on the totality of defendant's actions, and Spallina's concern that defendant was concealing a weapon or might flee the scene, Spallina had probable cause to arrest defendant for obstruction.

Further, defendant's reliance on State v. Dangerfield, 171 N.J. 446 (2002), is misplaced. In Dangerfield, our Supreme Court recognized that its prior holding in State v. Pierce, 136 N.J. 184, 190-93 (1994) favored the issuance of citations and summonses instead of custodial arrests for traffic offenses in certain situations. Dangerfield, 171 N.J at 458. However, the Court declined to

A-4649-16T4

extend Pierce beyond traffic offenses, stating that "we do not disturb the authority of the police to arrest for disorderly and petty disorderly persons offenses that occurred in their presence." Id. at 460. Obstruction, at the very least, is a disorderly persons offense. Moreover, police may search an arrestee incident to a lawful arrest "to remove from the arrestee's reach things that might be used to assault an officer . . . ." Id. at 461.

Here, the record firmly support's the motion judge's finding that the motor vehicle stop occurred in a high crime area and Spallina was concerned for "officer safety." Based on Spallina's observations and the events as they unfolded from the time he stopped defendant's vehicle until he stepped out of the car, the officer had probable cause to arrest defendant for obstruction and search him incident to that arrest.

## C.

We next turn to defendant's contention that the search of S.C.'s apartment was unlawful. Consent to search is a well-recognized exception to the warrant requirement. State v. Cushing, 226 N.J. 187, 199 (2016). The State bears the burden of proving "the consent was voluntary and that the consenting party understood his or her right to refuse consent." State v. Maristany, 133 N.J. 299, 305 (1993).

A third party's ability to consent to a search depends on the party's occupancy of and "common authority' over the premises." Cushing, 226 N.J. at 199 (quoting Fernandez v. California, 571 U.S. 292, 299 (2014)). Evidence seized during a search need not be suppressed "if the 'officer's belief that the third party had the authority to consent was objectively reasonable in view of the facts and circumstances known at the time of the search.'" Id. at 200 (quoting State v. Coles, 218 N.J. 322, 340 (2014)).

In this case, even assuming defendant's occasional overnight stays at S.C.'s apartment rendered him a co-occupant of the premises, there is ample evidence in the record to support the judge's determination that S.C. had authority to consent to the search of her residence. S.C. invited the officers inside her apartment, told them she wanted defendant's things removed, and led the officers into the bedroom where defendant kept "some belongings" because he stayed there on "some nights." S.C. executed a consent to search form after being advised that she could refuse consent, or even decide to terminate the search at any time. Her concern for her children further underscores her voluntary consent to search the premises.

A-4649-16T4

To the extent not addressed, defendant's remaining arguments challenging the evidence seized, including denial of his request for a <u>Franks</u> hearing,[5] lack sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(2).

## III.

Lastly,we address defendant's excessive sentencing argument. We review a "trial court's 'sentencing determination under a deferential [abuse of discretion] standard of review.'" <u>State v. Grate</u>, 220 N.J. 317, 337 (2015) (quoting <u>State v. Lawless</u>, 214 N.J. 594, 606 (2013)). Where, as here, a sentence is imposed pursuant to a plea agreement the same abuse-of-discretion standard applies. <u>State v. Sainz</u>, 107 N.J. 283, 292 (1987); <u>State v. Roth</u>, 95 N.J. 334, 364-65 (1984).

We affirm a sentence if: (1) the trial court followed the sentencing guidelines; (2) its findings of fact and application of aggravating and mitigating factors were based on competent, credible evidence in the record; and (3) its application of the law to the facts does not "shock[] the judicial conscience." <u>State v. Bolvito</u>, 217 N.J. 221, 228 (2014) (quoting <u>Roth</u>, 95 N.J. at 364-65). When reviewing a trial court's sentencing decision, we will not "substitute [our]

---

[5] <u>Franks. v. Delaware,</u> 438 U.S. 154, 170 (1978).

judgment for that of the sentencing court."  State v. Fuentes, 217 N.J. 57, 70 (2014).

The sentencing judge must identify and consider "any relevant aggravating and mitigating factors" that "'are called to the court's attention[,]'" and "explain how [it] arrived at a particular sentence."  State v. Case, 220 N.J. 49, 64-65 (2014) (quoting State v. Blackmon, 202 N.J. 283, 297 (2010)).  The judge's explanation of the aggravating and mitigating factors need not, however, "be a discourse."  State v. Dunbar, 108 N.J. 80, 97 (1987), overruled in part by State v. Pierce, 188 N.J. 155 (2006).  A sentencing court must "undertake[] an examination and weighing of the aggravating and mitigating factors listed in [N.J.S.A.] 2C:44-1(a) and (b)."  Roth, 95 N.J. at 359.  "An appellate court is bound to affirm a sentence, even if it would have arrived at a different result, as long as the trial court properly identifie[d] and balance[d] aggravating and mitigating factors that [were] supported by competent credible evidence in the record."  State v. O'Donnell, 117 N.J. 210, 215 (1989).

Here, the sentencing judge found aggravating factors: three, N.J.S.A. 2C:44-1(a)(3) (risk of committing another offense); six, N.J.S.A. 2C:44-1(a)(6) (extent of defendant's prior criminal record and the seriousness of the offenses); and nine, N.J.S.A. 2C:44-1(a)(9) (specific and general deterrence).  The court

found no mitigating factors, thereby rejecting defendant's blanket request that the following mitigating factors apply: one, N.J.S.A. 2C:44-1(b)(1) (defendant's conduct did not cause or threaten serious harm); two, N.J.S.A. 2C:44-1(b)(2) (defendant did not contemplate that his conduct would cause or threaten serious harm); eight, N.J.S.A. 2C:44-1(b)(8) (defendant's conduct was the result of circumstances unlikely to recur); and nine, N.J.S.A. 2C:44-1(b)(9) (defendant's character and attitude "indicate that he is unlikely to commit another offense").

On appeal, defendant contends the trial judge erroneously imposed the maximum sentence under the plea agreement, and failed to explain why none of the mitigating factors applied. While the judge's explanation for finding no mitigating factors was brief, defendant has not presented a meaningful argument or legal basis supporting any of the mitigating factors raised before the sentencing judge. Conversely, "competent credible evidence in the record[,]" see O'Donnell, 117 N.J. at 215, supports the judge's findings for aggravating factors three, six and nine. For example, the judge cited defendant's seven prior convictions from 1989 to 2006 "for possession of CDS, aggravated assault, distribution of CDS, and possession with intent to distribute on a number of occasions."

Further, defendant did not demonstrate "compelling circumstances" warranting waiver of his driver's license suspension. N.J.S.A. 2C:35-16(a). Specifically, defendant did not allege that loss of his license would "result in extreme hardship and alternate means of transportation are not available." Ibid. Rather, defense counsel simply stated at sentencing that, "Even though [defendant] is going to [s]tate [p]rison, that will be one less thing that he'll need to account for when he becomes eligible for a half-way house, which generally occurs about half way into his period of parole ineligibility." Defendant did not, however, present any evidence that public transportation, for example, would not be available to him when he is released to a half-way house.

We thus find no reason to second-guess the trial court's application of the sentencing factors. Defendant's prison term is near the middle of the second-degree sentencing range, and is warranted given his seven prior convictions, which include CDS offenses. In sum, the sentence imposed was manifestly appropriate and by no means shocks our judicial conscience. Roth, 95 N.J. at 365.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20

A-4649-16T4