**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4082-18

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JEMPSLEY BRUN,

      Defendant-Appellant.

_____

Submitted January 26, 2021 – Decided April 22, 2021

Before Judges Gilson and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 18-03-0159.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael A. Priarone, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Lillian Kayed, Assistant Prosecutor, on the brief).

PER CURIAM

A jury convicted defendant of five crimes and a disorderly persons offense: second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1); fourth-degree possession of hollow point bullets, N.J.S.A. 2C:39-3(f)(1); third-degree possession of cocaine with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(5); third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1); fourth-degree possession of marijuana, N.J.S.A. 2C:35-10(a)(3); and disorderly persons resisting arrest, N.J.S.A. 2C:29-2(a)(1), as a lesser included offense of third-degree resisting arrest. Defendant was sentenced to an aggregate prison term of five years with forty-two months of parole ineligibility.

Defendant appeals from his convictions, arguing that the trial court erred in: denying his motion to suppress evidence seized from his person and his vehicle; not excluding, sua sponte, testimony regarding his post-arrest silence; and responding to a question from the jury. We hold that none of these arguments has sufficient merit to reverse the jury verdict and, accordingly, we affirm.

I.

In the early morning hours of December 19, 2017, Harrison Police Officer Marc Silva observed a motor vehicle drive over a bridge from Newark to Harrison. Believing that the vehicle was speeding, the officer followed the

2

vehicle and observed it make two left turns without signaling. The second left-hand turn brought the vehicle into the parking lot of a Hampton Inn and the officer effectuated a stop.

After calling for backup, Officer Silva approached the vehicle, which had one occupant who was later identified as defendant. As the officer came alongside the vehicle, he smelled raw marijuana. By that time other officers had arrived, and at least one other officer was also standing alongside the vehicle. Officer Silva explained to defendant that he was going to have him step out of the car to conduct a plain smell search. Defendant then moved the vehicle forward and backwards, and Officer Silva directed defendant to stop and get out of the vehicle.

Defendant did not comply, and an officer reached into the vehicle and placed it in park. The officers then forcibly removed defendant from the car. As the officers attempted to handcuff defendant, a struggle ensued, and defendant was forced to the ground. During the struggle on the ground, Officer Silva heard the scraping of a metal object. When defendant was searched, a .22 caliber revolver was found tucked under his waistbelt. An examination of the gun revealed that it was loaded with hollow point bullets. A further search of defendant's person revealed crack cocaine, marijuana, and containers of methylenedioxymethamphetamine, also known as "MDMA" or "ecstasy."

3

After defendant had been handcuffed, Officer Silva looked in the car and saw a plastic bag sticking out of the center console. The officer testified that based on his training and experience he believed the bag contained marijuana. The officer seized the bag of marijuana and then searched the interior of the car. The officer found a second weapon, a .9 mm handgun, under a panel in the floorboard.

After defendant was indicted for unlawful possession of the handguns, drug offenses, and resisting arrest, he moved to suppress the evidence seized from his person and the vehicle. Defendant argued that the stop of the vehicle was unlawful and the ensuing searches of his person and vehicle were also unlawful.

An evidentiary hearing was conducted over several days in 2018, and the court heard testimony from six witnesses, including Officer Silva. The trial court placed its findings of facts and conclusions of law on the record on August 24, 2018, and on that same day it issued an order denying defendant's motion to suppress the physical evidence.

The trial court made a series of findings concerning the stops and searches. In doing so, the court relied on the testimony of Officer Silva, which the court found to be credible. First, the court found that defendant's vehicle was lawfully

4

stopped because the officer had observed three motor-vehicle violations: speeding and two turns without a signal.

Second, the court found that the officer had lawfully asked defendant to get out of the car because the officer had smelled raw marijuana and the officer had a reasonable concern for his safety because defendant had moved the vehicle while Officer Silva and another officer were standing alongside it.

Third, the court found that defendant was lawfully arrested because he resisted the officers and that resistance, in combination with defendant's prior actions in moving the car and the smell of raw marijuana, constituted probable cause for an arrest.

Fourth, the trial court found that the search of defendant's person was lawful as a protective search incident to defendant's arrest. Accordingly, the trial court found that the .22 caliber revolver and drugs found on defendant's person were lawfully seized.

Finally, the court found that the search of the interior of the vehicle was lawful. The trial court reasoned that the officer's smelling raw marijuana triggered the automobile exception to the warrant requirement. In addition, the trial court found that Officer Silva saw and lawfully seized a bag of marijuana under the plain view exception.

5

The case then proceeded to trial, which was conducted in January 2019. Officer Silva also testified at trial. During his cross-examination, the officer testified that when he first stopped the car he conducted a database search of the vehicle's registration. That search revealed that the vehicle defendant was driving was owned by another individual. Defendant's counsel then proceeded to ask Officer Silva a series of questions concerning whether he asked defendant how he came to possess the vehicle, how long he had possessed the vehicle, and whether the "stuff" located in the vehicle belonged to defendant. In response, Officer Silva stated that defendant would not talk. Defendant's counsel then asked: "Well, did you give him his Miranda[1] rights?" And the officer responded: "Yes, I did."

Defendant's counsel then proceeded to ask follow-up questions concerning the Miranda rights given to defendant and the assistant prosecutor requested a sidebar. At sidebar, the assistant prosecutor explained that she was concerned "about the nature of the questions." Defense counsel responded that he was not concerned because defendant had not given a statement. The trial court overruled the assistant prosecutor's objection and allowed defense counsel to continue his line of questioning.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

6

Defendant's counsel then challenged Officer Silva's credibility by repeatedly asking him about the Miranda rights given to defendant and why there was no Miranda rights form filled out to confirm that those rights had been given. Defense counsel also elicited that Officer Silva had not memorialized in his police report that he had given defendant his Miranda rights.

On re-direct, the assistant prosecutor had the following exchange with Officer Silva:

> [Question:] And just briefly touching on, did you read the defendant's [sic] his Miranda rights?
>
> [Answer:] Yes, I did.
>
> [Question:] Okay. And at any time did he indicate that he wanted to speak with you?
>
> [Answer:] No.

Defendant elected not to testify at trial. In closing arguments, his counsel contended that the officers fabricated the alleged smell of marijuana to justify the search of the vehicle and that the gun found in the floor compartment of the vehicle was not defendant's gun because he was using someone else's car.

During deliberations, the jury asked the court: "Do[] the police have the right to ask defendants to get out of [the] vehicle if there [is] no smell of raw marijuana?" In response, the trial court reminded the jury that they were the judges of the facts. The court then explained that the question they asked was

7

"a question that raises a legal issue, a legal question that is not for your consideration. Okay[?]" The court went on to explain that the jury may "rely on your combined recollection as to the testimony, the evidence that you [have] heard during the trial."

After further deliberations, the jury returned its verdict, finding defendant guilty of six of the charges against him, but not guilty of five other charges. The jury could not reach a verdict on the charge of possession of marijuana with the intent to distribute. Thereafter, the State dismissed that charge.

## II.

On appeal, defendant makes four arguments, which he articulates as follows:

> I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE AS THE ARRESTING OFFICER HAD NO LEGAL BASIS FOR THE STOP OF THE VEHICLE DEFENDANT WAS OPERATING
>
> II. IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE THE TRIAL COURT ERRONEOUSLY DETERMINED THAT WHETHER OFFICER SILVA WAS TRUTHFUL IN TESTIFYING THAT HE SMELLED RAW MARIJUANA UPON STOPPING THE VEHICLE DEFENDANT WAS OPERATING WAS A "JURY ISSUE" DESPITE THE COURT'S OWN OBSERVATION THAT THERE WAS NO ODOR TO THE SEALED PACKAGES OBTAINED IN THE ILLEGAL SEARCH

8

III.     THE TRIAL COURT COMMITTED PLAIN
ERROR IN ALLOWING TESTIMONY REGARDING
DEFENDANT'S POST-ARREST SILENCE

IV.     IN RESPONSE TO A QUESTION DURING
DELIBERATIONS,     THE     TRIAL     COURT
ERRONEOUSLY INSTRUCTED THE JURY THAT
WHETHER THE ARRESTING OFFICER HAD A
LEGAL BASIS TO ASK DEFENDANT TO EXIT THE
HONDA WITHOUT HAVING SMELLED RAW
MARIJUANA WAS A LEGAL QUESTION FOR THE
COURT     AND     NOT     FOR     THE     JURY'S
CONSIDERATION

We reject these arguments because they are based on misinterpretations of the record.  The credible evidence in the record supports the findings at the hearing and the instructions given at trial.

1.     The Motion to Suppress

Our review is limited when a motion to suppress is denied following an evidentiary hearing.  We defer to the factual and credibility findings made by the trial court, "so long as those findings are supported by sufficient credible evidence in the record."  State v. Handy, 206 N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)).  Deference is afforded "because the 'findings of the trial judge . . . are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'"  State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).  "An appellate court should

9

disregard those findings only when a trial court's findings of fact are clearly mistaken." State v. Hubbard, 222 N.J. 249, 262 (2015) (citing State v. Johnson, 42 N.J. 146, 162 (1964)). The legal conclusions of a trial court are reviewed de novo. Id. at 263 (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).

The Fourth Amendment states that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
>
> [U.S. Const. amend. IV; see also N.J. Const. art. I, ¶ 7 (using essentially identical language).]

Warrantless searches are presumed invalid, but the State may overcome that presumption by showing that the search fell into one of the recognized exceptions to the warrant requirement. State v. Hill, 115 N.J. 169, 173-74 (1989).

The search and seizure at issue on this appeal involved several exceptions to the warrant requirement. The exception relevant to the stop of the vehicle is the investigatory stop.

To lawfully stop a motor vehicle, "a police officer must have a reasonable and articulable suspicion that the driver of a vehicle, or its occupants, is committing a motor-vehicle violation or a criminal or disorderly persons

10

offense[.] " State v. Scriven, 226 N.J. 20, 33-34 (2016) (citing Locurto, 157 N.J. at 470). Accordingly, an investigatory stop is permissible "if it is based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity." State v. Chisum, 236 N.J. 530, 545-46 (2019) (quoting State v. Pineiro, 181 N.J. 13, 20 (2004)). "An investigative detention that is premised on less than reasonable and articulable suspicion is an 'unlawful seizure,' and evidence discovered during the course of an unconstitutional detention is subject to the exclusionary rule." Elders, 192 N.J. at 247 (citing State v. Rodriguez, 172 N.J. 117, 132-33 (2002)).

In his first argument, defendant contends that the officer only stopped the vehicle because of the two left turns made without a signal. He then goes on to argue that the officer did not testify that those turns affected other traffic as required by N.J.S.A. 39:4-126. This argument misstates the record. At the suppression hearing, Officer Silva testified that when he first observed the vehicle being driven by defendant, he noticed that it was speeding. He then followed the vehicle and saw it make two left turns without signaling. The trial court found the officer's testimony to be credible and, therefore, the officer had three motor vehicle infractions warranting the stop: speeding and two left turns made without signals.

11

An investigatory stop of a motor vehicle is lawful so long as it is based on a reasonable and articulable suspicion that a violation has occurred. State v. Alessi, 240 N.J. 501, 518 (2020) (citing State v. Mann, 203 N.J. 328, 338 (2010)). Accordingly, if the motor vehicle violation is ultimately not proven, it does not make the stop unlawful. State v. Heisler, 422 N.J. Super. 399, 413 (App. Div. 2011) (quoting State v. Williamson, 138 N.J. 302, 304 (1994)) ("the State need prove only that the police lawfully stopped the car, not that it could convict the driver of the motor-vehicle offense."). For that reason, we reject defendant's argument that the court could not rely on the speeding violation because ultimately the court found that defendant had engaged in careless driving.

Moreover, even if we were just to focus on the left-hand turns, the stop still would have been lawful. N.J.S.A. 39:4-126 does not require that traffic be affected by a turn without a signal; rather it prohibits a turn without a signal that "may" affect traffic. We have previously held that the statute can be violated if the turn is made without a signal while the police car is following because the police car, which is part of the traffic, could have been affected. State v. Moss, 277 N.J. Super. 545, 547 (App. Div. 1994).

In his second argument, defendant contends that the trial court failed to determine if Officer Silva was truthful in testifying that he smelled raw

marijuana. Not so. The trial court expressly found that Officer Silva was credible and relied on his testimony that he had smelled raw marijuana. In that regard, the trial court stated:

> This [c]ourt finds that the arresting officers would not have had a reasonable - - a reason to search [defendant's] vehicle, but for the earlier detection of the odor of raw marijuana emanating from his car. Furthermore, this [c]ourt finds Patrolman Silva to be credible . . . .

Based on that factual finding, the trial court also found that Officer Silva had grounds to ask defendant to get out of the car.[2] Indeed, the court reasoned that the smell of marijuana together with concerns for the officers' safety made it lawful for the officers to direct defendant to get out of the car. See State v. Bacome, 228 N.J. 94, 104 (2017) (reiterating that following a motor vehicle stop a driver can be asked to get out of his or her car if there is an articulable reason for heightened caution for the officer's safety). Here, the court found that defendant moved the car while two officers were standing outside of it, triggering a heightened caution for the officers' safety.

---

[2] The New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, N.J.S.A. 24:6I-31 to -56 (the Act), became effective on February 22, 2021. Under the Act, the odor of marijuana alone cannot establish the reasonable articulable suspicion necessary to initiate a search of a person suspected of fourth-degree possession of marijuana, N.J.S.A. 2C:35-10(a)(3)(b)(i). Because that limitation is prospective, it is inapplicable to the December 19, 2017 search of defendant's person and vehicle.

13

Based on the court's finding of the smell of raw marijuana, the court also correctly found that the automobile exception allowed the officer to search the interior of the car. See State v. Witt, 223 N.J. 409, 447-48 (2015); State v. Rodriguez, 459 N.J. Super. 13, 20-21 (App. Div. 2019).[3]

In short, the trial court made several factual findings supporting its determination that the vehicle was lawfully stopped, and the ensuing searches were also lawful. As those factual findings are all supported by credible evidence in the record, we affirm those rulings.

2.    The Testimony Concerning Miranda

In his third argument, defendant contends that the trial court erred in allowing testimony concerning defendant's silence after he had been given his Miranda rights. In making that argument, defendant focuses on questions asked by the assistant prosecutor on re-direct. We discern no reversible error because this entire line of questioning was opened by defendant's counsel.

Normally, the State cannot use defendant's post-arrest silence against him. State v. Taffaro, 195 N.J. 442, 456 (2008). Here, however, it was defense

---

[3]  The trial court also found that the marijuana in the car was properly seized under the plain view doctrine. See State v. Gonzales, 227 N.J. 77, 90 (2016). That finding was also supported by credible evidence making the seizure lawful. See State v. Reininger, 430 N.J. Super. 517, 537 (App. Div. 2013) (explaining that when an officer seizes contraband in plain view from an automobile, it is "not necessary for the State to establish exigent circumstances").

14

counsel who raised defendant's post-arrest silence.  Accordingly, defendant opened this door and he cannot now argue that this is grounds for reversal.  State v. Munafo, 222 N.J. 480, 487 (2015) (quoting State v. A.R., 213 N.J. 542, 561 (2013)) (pointing out that under the invited error doctrine, trial errors that were induced by defendant's counsel "ordinarily are not a basis for reversal on appeal"); see also State v. Jenkins, 299 N.J. Super. 61, 68-69 (App. Div. 1997) (finding that defendant's "open[ing] the door" on his post-arrest silence justified State's comments on it).

3.    The Jury Question

Finally, defendant contends that the court erred in responding to a jury question.  We disagree.

As already noted, during its deliberations, the jury asked whether the police had the right to ask defendant to get out of the vehicle if there was no smell of raw marijuana.  The trial court correctly informed the jury that that issue was a question of law.  See Bacome, 228 N.J. at 106-07; see also State v. Smith, 134 N.J. 599, 617-18 (1994).

Defendant incorrectly argues that this was inconsistent with the court's ruling during the motion to suppress.  In denying the motion to suppress, the trial court did state that Officer Silva's credibility would be an issue for the jury.  The court made that statement, however, after finding Officer Silva credible

15

when he testified that he smelled raw marijuana. Accordingly, the court already had determined that for purposes of the motion to suppress, the officer had smelled raw marijuana.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

16