**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1865-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KURT STUMP,

    Defendant-Appellant.

_____

Argued August 17, 2021 – Decided September 7, 2021

Before Judges Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 19-05-0789.

Kevin S. Finckenauer, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Kevin S. Finckenauer, of counsel and on the briefs).

Monica do Outeiro, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Lori Linskey, Acting Monmouth County Prosecutor, attorney; Monica do Outeiro, of

counsel and on the brief; Alecia Woodard, Legal Assistant, on the brief).

PER CURIAM

Defendant Kurt Stump was a passenger in a taxi when it was stopped for motor-vehicle violations. A police officer removed defendant from the car, seized a prescription bottle from him, and charged him with third-degree possession of Xanax without a prescription, N.J.S.A. 2C:35-10(a)(1). The trial court denied defendant's motion to suppress the warrantless seizure of the bottle and Xanax pills. Thereafter, defendant pled guilty and was sentenced to one year of probation.

He appeals, arguing he was illegally removed from the taxi and the prescription bottle and pills were not lawfully seized. We agree. The trial court did not find, and the record contains insufficient evidence to establish, that defendant posed a heightened risk of danger justifying his removal from the taxi. In addition, the evidence establishes that the bottle was recognizable as contraband only after the officer seized it and saw the prescription was for Methadone, but the pills appeared to be Xanax. Accordingly, we reverse the order denying the motion to suppress and defendant's conviction.

A-1865-19

I.

The facts were established at an evidentiary hearing where two witnesses testified:  Police Officer Barry Hollo and defendant.  At approximately 5 p.m. on March 21, 2019, Officer Hollo and two other officers were on a "proactive" narcotics patrol in an unmarked police vehicle in a "high crime" area in Asbury Park.  The officers observed defendant walking on a sidewalk while talking on a cellphone and looking around.  Hollo explained that when he saw defendant, he did not know him, nor had he had any prior interactions with defendant. Nevertheless, the officers pulled their vehicle to the side of the road to observe defendant.  They saw defendant meet P.T., who Hollo recognized as someone who had previously been involved in the distribution of narcotics.

As defendant and P.T. were standing on the sidewalk, a taxi pulled up to the curb and defendant and P.T. got into the cab.  Officer Hollo testified that the cab had a female driver and another passenger in the rear seat.  Hollo recognized the passenger as L.K., who Hollo knew to be involved in "[n]arcotics and violent offenses."

After defendant and P.T. entered the taxi, Officer Hollo observed the cab pull away from the curb without signaling.  Following in the police vehicle, Hollo saw the taxi make a left turn at an intersection that was "clearly marked

with a no left turn sign." Thereafter, the officers signaled for the taxi to pull over, which it did.

The officers got out of their vehicle and approached the taxi. Officer Hollo walked up to the cab on the passenger side and saw defendant "moving frantically about the rear portion of the taxi." When Hollo got level with the passenger window, he saw defendant trying to push an orange pill bottle into the crease of the back seat. At that point, Hollo "escorted" defendant out of the cab by taking his wrists and walking him to the rear of the taxi. Defendant was holding the pill bottle in his left hand and Hollo could see that the pills in the bottle appeared to be Xanax. Hollo then took the pill bottle from defendant, examined it more closely, and saw that the prescription was in defendant's name, but for Methadone. Hollo also observed the pills more closely and, based on his training and experience, believed the pills were Xanax. Defendant told Hollo he had a prescription but Hollo placed defendant under arrest for possessing Xanax without a prescription.

P.T. and L.K. were also removed from the cab and arrested by Hollo's fellow officers for possessing other narcotics. According to Hollo, the taxi driver was not involved in any narcotic activity, and she was released without being given summonses or tickets for the motor-vehicle violations.

4

On cross-examination, Hollo elaborated that he had seen the pills in the bottle when defendant was still in the cab. He testified that he "immediately recognized the pills in the pill bottle as Xanax" because of their distinct rectangular shape. During recross-examination, in response to a question from the judge, Hollo explained that he was first able to see the label on the bottle when he removed the bottle from defendant and "was able to observe it . . . in a closer view." Later, Hollo was shown his police report, which stated that defendant had told Hollo that the prescription was for Xanax. Hollo then clarified that if he had earlier testified that defendant told him that the prescription was for Methadone, he "misspoke." Thus, Hollo confirmed that defendant had told him that the prescription was for Xanax, and Hollo saw that the prescription label was for Methadone only after he had taken the bottle from defendant.

Defendant's testimony was in marked contrast to the testimony by Officer Hollo. Defendant stated that he was walking down a street in Asbury Park trying to call a cab so he could go see a friend who was at a hospital. Defendant waved a cab down, and the cab already had a passenger who he did not know. Defendant got into the cab, and, as they were driving toward the hospital, the cab stopped to pick up another person. The cab then began to move again but

suddenly pulled over. Defendant testified that his door "fl[ew] open," he was "grabbed and dragged out of [the] cab," and told "to put [his] hands on the vehicle." Defendant was then searched, and a police officer took a prescription bottle out of defendant's pocket. Thereafter, the officer conferred with other officers on scene, came back to defendant, and asked defendant if the pills were Xanax, then pointed out the prescription was for Methadone. According to defendant, he did not respond and was arrested.

Defendant claimed he never gave the police permission to search him or to take the pill bottle from his pocket. Defendant also explained that when he was dragged out of the cab, the other two passengers were simultaneously pulled out of the vehicle and all three were searched. By contrast, defendant stated that the taxi driver was not questioned.

After hearing the testimony and considering the physical evidence, which included the pill bottle, the trial court denied the motion to suppress. Relying on the testimony of Officer Hollo, the court found that the police had lawfully stopped the taxi because of two traffic violations. The court also found that defendant had been lawfully removed from the cab because the vehicle was stopped in a high-crime area and Officer Hollo saw defendant moving frantically in the cab while holding the pill bottle.

6

In making those findings, the court questioned whether Hollo could see the pills while the bottle was in defendant's possession. Nevertheless, the court found, under the circumstances, that Hollo was permitted to "investigate what was in defendant's hand." The court ultimately found Hollo could see through the bottle when he took the bottle from defendant.

Finally, the trial court found that the bottle had been lawfully seized under the plain-view doctrine. In that regard, the court found that Officer Hollo was lawfully in an area to view defendant after the taxi had been stopped. The court found Hollo "had a right to ask to see [the prescription] bottle" and, consequently, was able to see the bottle's contents and label. The court also found that the pills in the bottle were immediately recognizable as contraband because "[p]rior to seeing the prescription bottle, Officer Hollo observed defendant moving frantically in what he believed was an attempt to conceal something." Moreover, when defendant exited the cab, he claimed to have a prescription bottle, but the officer saw that the prescription did not match the shape of the pills. The court went on to find that once the officer had seized the bottle, the officer could observe that the prescription was for Methadone, but the pills appeared to be Xanax. In making that finding, the trial court stated:

> Looking at the totality of the circumstances from the
> standpoint of an objectively reasonable police officer

7 A-1865-19

with Officer Hollo's training and experience, Officer Hollo had probable cause to associate the Xanax pills found in plain view with contraband prior to his seizure or at the time that he seized them.

## II.

On appeal, defendant makes two arguments, which he articulates as follows:

> POINT I – DEFENDANT'S REMOVAL FROM THE VEHICLE WAS UNCONSTITUTIONAL BECAUSE THERE WAS NO "H[E]IGHTENED AWARENESS OF DANGER" DURING THE MOTOR VEHICLE STOP
>
> POINT II – SEIZURE OF DEFENDANT'S PILL BOTTLE WAS UNCONSTITUTIONAL BECAUSE IT WAS NOT IMMEDIATELY APPARENT THAT THE PILL BOTTLE CONTAINED CONTRABAND, AND INSTEAD THE COURT RELIED ON OBSERVATIONS MADE AFTER DEFENDANT'S ILLEGAL REMOVAL FROM THE VEHICLE AND AFTER THE SEIZURE ITSELF OCCURRED IN FINDING THE SEIZURE WAS PROPER
>
> > A.    The Pill Bottle was an Intrinsically Innocent Object that Fails to Provide Grounds for Probable Cause
> >
> > B.    Defendant's Movements while in the Taxi, Even in Conjunction with the Pill Bottle, Fail to Give Rise to Probable Cause
> >
> > C.    The Motion Court Improperly Relied on Observations Made After Defendant

8

was Unlawfully Removed from the Vehicle
and After the Pill Bottle was Unlawfully
Seized in Determining Probable Cause

In reviewing an order concerning a motion to suppress following an evidentiary hearing, appellate courts generally defer to the factual findings made by the trial court "so long as those findings are supported by sufficient credible evidence in the record." State v. Handy, 206 N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). The legal conclusions of a trial court are reviewed de novo. State v. Hubbard, 222 N.J. 249, 263 (2015) (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).

Having reviewed the record, we find no evidence supporting a heightened caution or reasonable suspicion that defendant was engaged in illegal activity justifying his removal from the taxi. In addition, there was no evidence from which Officer Hollo could have determined that the bottle contained unprescribed drugs before seizing it from defendant. Therefore, we reverse.

A.

Both the United States and New Jersey Constitutions prohibit "unreasonable searches and seizures." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. A motor vehicle can be lawfully stopped without a warrant if a police officer has "a reasonable and articulable suspicion that the driver of a vehicle,

or its occupants, is committing a motor-vehicle violation or a criminal or disorderly persons offense." State v. Scriven, 226 N.J. 20, 33-34 (2016) (citing State v. Locurto, 157 N.J. 463, 470 (1999)).

"[O]rdering a person out of a car constitutes a seizure because the person's liberty has been restricted." State v. Bacome, 228 N.J. 94, 104 (2017) (citing State v. Smith, 134 N.J. 599, 609, 611 (1994)). Consequently, an occupant can be ordered to get out of a vehicle "only when it is objectively reasonable to do so." Ibid.; see also Maryland v. Wilson, 519 U.S. 408, 411-14 (1997).

New Jersey law is more protective than federal law on the grounds justifying a passenger's removal from a car stopped for a motor-vehicle violation. Bacome, 228 N.J. at 105. Under New Jersey's Constitution, police officers can "remove passengers only when the circumstances present reason for heightened caution." Id. at 107. Accordingly, a police officer can "order a passenger out of a vehicle if the officer can 'point to specific and articulable facts that would warrant heightened caution to justify ordering the occupant[] to step out of a vehicle detained for a traffic violation.'" Id. at 106 (quoting Smith, 134 N.J. at 618). An officer can also "order a passenger out of an automobile if the officer ha[s] an articulable suspicion short of probable cause to believe that

a crime ha[s] been committed." State v. Mai, 202 N.J. 12, 25 (2010) (quoting State v. Tucker, 136 N.J. 158, 167 (1994)).

Furtive movements by a passenger may satisfy the heightened-caution standard. Bacome, 228 N.J. at 107 (citing Smith, 134 N.J. at 618-19). Consequently, if a passenger is observed making surreptitious movements and those movements suggest a risk to officer safety, that risk supports the exercise of heightened caution. Ibid. Nevertheless, "[n]either 'inarticulate hunches' nor an arresting officer's subjective good faith can justify infringement of a citizen's constitutionally guaranteed rights." State v. Alessi, 240 N.J. 501, 518 (2020) (alteration in original) (quoting State v. Arthur, 149 N.J. 1, 8 (1997)).

Here, the trial court found that the taxi was lawfully stopped because of two motor-vehicle violations. That finding is supported by substantial credible evidence in the record. The trial court did not, however, find that there were circumstances warranting heightened caution for officers' safety. Officer Hollo never testified that he had any concern about defendant posing a risk. Instead, Hollo's testimony focused on his observation that defendant was holding a prescription bottle. While Hollo testified on cross-examination that he had a

general concern for officer safety because "[y]ou never know what's going to happen on a car stop," he never linked that concern to defendant.[1]

Because there is no evidence that defendant's movements presented reason for heightened caution due to officer safety, the question becomes whether defendant's possession of a prescription bottle gave rise to a reasonable and articulable suspicion that defendant was engaged in criminal activity. Officer Hollo testified that when he walked up to the passenger window, he saw defendant trying to stuff a prescription bottle into a crease in the rear seat of the taxi. The prescription bottle by itself is not inherently dangerous nor was it immediately recognized as contraband. See Russell v. Coyle, 266 N.J. Super. 651, 660 (App. Div. 1993). The prescription bottle and pills could be recognized as contraband only when the officer knew what the prescription was for and whether the pills in the bottle matched that prescription.

Officer Hollo testified that he first had seen that the prescription on the bottle was for Methadone after he had taken the bottle from defendant. Accordingly, when the officer observed defendant in the car, he had no articulable facts indicating that the possession of the prescription bottle was

---

[1] Based on Officer Hollo's testimony, L.K. may have presented a risk, since Hollo testified L.K. was known to have engaged in "violent offenses." Hollo, however, did not testify that defendant posed a safety risk.

illegal. In short, there are insufficient facts in the record to support the officer's removal of defendant from the taxi.

B.

In addition, there are no facts supporting the seizure of the prescription bottle and pills under the plain-view doctrine. The plain-view exception allows police to seize contraband when (1) a police officer is lawfully in the area where he or she makes the observation; and (2) it is "immediately apparent that the seized item is evidence of a crime." State v. Gonzales, 227 N.J. 77, 101 (2016).

Officer Hollo testified that he first had seen the label on the prescription bottle after he took the bottle from defendant. Accordingly, before seizing the bottle the officer had no articulable suspicion or probable cause to believe that the prescription bottle contained unprescribed drugs. While Officer Hollo testified that he could see the pills in the bottle when the bottle was still in defendant's possession, and while he also testified that he believed the pills were Xanax, he had no basis to believe that the prescription on the bottle was for something other than Xanax until he seized the bottle and observed it more closely.

The trial court found, under the circumstances, Officer Hollo had probable cause to associate the pills with contraband "prior to his seizure or at the time

13

that he seized them." The law does not allow an "either-or" finding. The bottle and pills could be seized under the plain-view exception only if it was "immediately apparent" they were contraband. Ibid. Moreover, the plain-view exception does not apply retrospectively. A police officer must have "probable cause to associate the property with criminal activity" before seizing it. State v. Bruzzese, 94 N.J. 210, 237 (1983) (citation omitted); accord State v. Williams, 461 N.J. Super. 1, 11 (App. Div. 2019) (citing State v. Johnson, 171 N.J. 192, 208 (2002)).

C.

In summary, the trial court never found that there were circumstances giving rise to a heightened caution justifying defendant's removal from the taxi. Furthermore, the facts do not support the seizure of the bottle and pills under the plain-view exception. Accordingly, we reverse the order denying defendant's motion to suppress the seizure of the prescription bottle and the pills. We also reverse defendant's conviction. We remand with direction that the prescription bottle and the pills be suppressed. The State can then decide how it wishes to proceed.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1865-19